No. 37,597

Butler J. Felts, Jr., doing business as The B. J. Felts Motor Co., *Appellee*, v. Jack N. Sugg et al. (Gladys A. Williams, Administratrix of the Estate of Neal O. Williams, Deceased; Gladys A. Williams, Bonnie Louise Williams, Neal Williams, Jr., and Alta Lucille Williams), *Appellants*.

(207 P. 2d 460)

Opinion filed June 11, 1949.

*Gale Moss*, of El Dorado, argued the cause and was on the briefs for the appellants.

*George J. Benson*, of El Dorado, argued the cause, and *George S. Benson* and *Page W. Benson*, both of El Dorado, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action originally commenced against Jack N. Sugg, Neal O. Williams, J. S. Bacon and C. W. Bacon, to recover possession of an automobile hereafter referred to as the Ford car. Sugg is said to be a fugitive from justice, and the abstract does not disclose that any service of summons was had upon him. If Bacon and Bacon filed any pleadings or made any defense, the same are not shown. Before trial Williams died and the action was revived against the administrator of his estate and his heirs, and

they answered and defended the action and are hereafter referred to as the defendants.

We need not review the pleadings. The action was tried on an agreed statement of facts, which for our purposes is summarized.

One Sexton, then a resident of Joplin, Mo., and the owner of the Ford car, on March 12, 1947, applied for and received a certificate of title thereto from the proper official in Missouri; on August 25, 1947, Sexton, for a valuable consideration, sold and delivered the Ford car to one Lyster, a registered used motor vehicle dealer at Galena, Kan., and at that time delivered to Lyster the certificate of title to the car, the same being assigned in blank; at that time Sexton called a notary public of Jasper county, Missouri, who took the oath of Sexton to the execution and signing of the assignment of the certificate of title, but through oversight not then noticed by either Sexton or Lyster, the notary public failed to sign his name or attach his official seal; on August 26, 1947, Lyster sold and delivered the Ford car to the plaintiff Felts for the sum of $1,150 and delivered the certificate of title endorsed in blank to Felts, who was a registered used motor vehicle dealer at Pittsburg, Kan.; on September 19, 1947, Felts had the Ford car parked at his place of business at Pittsburg, with a "For Sale" sign on it, and a man representing himself to be Sugg came into Felts' place of business and stated he was a registered used car dealer at Eureka, Kan., and that he had been at an auction sale at Joplin, Mo., and had purchased a Chevrolet car; that he had a buyer for a Ford car like that of Felts and after some dealing agreed to buy the Felts Ford car for $1,250, but that he had the money in the bank and would have to give a check which would be paid when presented. Details need not be stated, but Felts showed Sugg his certificate of title, and it was agreed that Sugg should give a check, and that the check with the certificate of title should be sent to the bank, the certificate of title to be delivered to Sugg by the bank when the check was paid; at that time Felts delivered the Ford car to Sugg who tied it to the rear of his Chevrolet and drove away; in due course the check, with certificate of title attached, reached the bank in Eureka on which it was drawn, and on September 22, 1947, the check was protested and payment refused because of insufficient funds of Sugg, and the check and certificate of title were ultimately returned to Felts who has never received any consideration from Sugg or anyone else for the Ford car; that at all times since August 26, 1947, ex-

cept while in transit to the banks, the certificate of title has been in possession of Felts, and neither he nor anyone for him ever delivered to Sugg any bill of sale or any certificate of title or any assignment of either; that on September 20, 1947, Sugg came to El Dorado to the place of business of Neal O. Williams, having in his possession the Ford car and at that time offered to Williams a list of six automobiles at prices noted which he offered to sell to Williams; at that time Sugg had one other automobile with him; on that date Williams agreed to purchase the Ford car for $1,050 and gave Sugg a check therefor; at that time Sugg exhibited some certificates of title to Williams and his son and to another named person, but none were able to state that any certificate of title was to the Ford car; Sugg retained the certificate of title exhibited to Williams and told Williams he would have it reissued and would then assign or transfer it to Williams; neither Sugg nor anyone for him has furnished Williams with a certificate of title or bill of sale to the Ford car. Sugg cashed Williams' check for $1,050.

At the trial the court heard evidence as well as the agreed facts and on October 27, 1948, found that at the time demand was made on defendants, plaintiff was the owner and entitled to the immediate possession of the Ford car; that when demand was made the car was worth $1,200 but that there had been a general decrease in values and that on the day of the trial it was worth $1,150; that the fair and reasonable value of the use of the car from date of demand to date of trial, 390 days, was one dollar per day, and that after plaintiff took the car under his replevin order, the defendants had given a redelivery bond and at all times since had had the use and possession of the car, and it rendered judgment that plaintiff was entitled to the immediate possession of the Ford car and to the sum of $440 and interest from October 27, 1948, and the further sum of one dollar per day after October 27, 1948, until possession was returned to the plaintiff, and for costs. Defendants' motion for a new trial was overruled and in due time they perfected their appeal to this court.

In their brief defendants state that the crux of their case is: Can a plaintiff who obtained possession of an automobile to which he had not received either legal or equitable title, successfully prosecute an action in replevin against a subsequent possessor who has no title, either legal or equitable, but who, for value, obtains the

automobile from the person to whom the plaintiff relinquished possession?

In their argument on that question the defendants direct our attention to G. S. 1947 Supp. 8-135 (c) (6) that it shall be unlawful for any person to buy or sell any vehicle required to be registered unless there shall pass a certificate of title, with an assignment, and so forth, as provided in the statute, and to G. S. 1947 Supp. 8-129 (b) pertaining to "specially constructed, reconstructed or foreign" vehicles, and to our decisions interpreting the statutes, viz., *Sims v. Sugg,* 165 Kan. 489, 196 P. 2d 191; *Farmers & Merchants State Bank v. Hunter,* 166 Kan. 52, 199 P. 2d 196; *Bankers Investment Co. v. Meeker,* 166 Kan. 209, 201 P. 2d 117; and stressing language therein that the sale of an automobile, unaccompanied by delivery of a certificate of title and an assignment in accord with the statutes is fraudulent and void and that a purchaser under such a sale obtains no title either legal or equitable, they contend that plaintiff may not maintain replevin for the reason that under the statute (G. S. 1935, 60-1002) he is not the owner of the property nor has he any special ownership or interest therein; that considering the transaction by which he obtained possession of the Ford car as fraudulent and void, he was not the owner of the automobile; and that plaintiff never, at any time, had more than a right of possession and he had that right only as long as he retained possession.

It is correct to say that a party may not maintain an action in replevin unless he plead and prove that he is the owner or has a special ownership or interest therein, and the primary question is, did the proof so show. It is likewise true that in the cases cited above there is language that the sale of a motor vehicle, unaccompanied by delivery of a certificate of title and an assignment, as provided by statute, is fraudulent and void, and that a purchaser under such a sale obtains no title either legal or equitable. Without reciting the facts of those cases or reviewing them to show why the statements were so made, we are of opinion that if the statements there made are to be given universal application they are too broad and should not be followed, for even though the sale be declared fraudulent and void, equitable considerations may enter into any controversy which may arise out of any such transaction, and be considered if necessary to a complete determination of the rights of various claimants.

Where a buyer for value purchases a motor vehicle from a seller and the vehicle is delivered to him with a certificate of title and an assignment thereof, even though the certificate of title and the assignment thereof are incomplete and defective, he does acquire an interest in the vehicle, which, under proper circumstances, he can protect. For instance, in such case he may compel the seller to furnish and deliver to him a certificate of title and an assignment thereof that fully complies with statutory requirements. The motor vehicle having been delivered to him, he would have such an interest that he could resist any action by his seller to recover possession if the seller relied solely on the ground that no sufficient certificate of title and assignment had been delivered to the buyer. The buyer would also have such an interest that he could maintain his right of possession against anyone not having a better title, otherwise he could not recover possession from one who borrowed the motor vehicle, or from a trespasser or from a thief. There is nothing in the statutes that because a sale between individuals of a motor vehicle without compliance is fraudulent and void, it is to be interpreted as applying to any persons other than the parties to the transaction or those in privity with them.

In the instant case plaintiff paid full value for the Ford car and received the car and a defective certificate of title and an assignment. He lost possession of the car through the fraudulent acts of Sugg, but he never surrendered to Sugg any certificate of title or assignment, and certainly as against Sugg he could have maintained an action to recover possession. Defendants recognize they are in no better position than Sugg, and that they have no right, title or interest in the Ford car—their contention is merely that plaintiff has no right, title or interest therein and therefore cannot maintain his action in replevin against them. That contention cannot be sustained.

Defendants also make some contention that in his petition plaintiff pleaded only that he was the owner and not that he had a special ownership, and that, for reasons above noted, he is not the owner and cannot rely upon any special ownership, and our attention is directed to authorities as to the sufficiency of proof in actions in replevin.

The plaintiff objects to any consideration of the above contention, asserting it was not raised in the trial court, where he might have amended to conform to proof (see G. S. 1935, 60-759, and

cases cited in annotations) and that the contention is made too late. We shall not place our conclusion on that ground, however, but on the ground, also urged, that although the pleadings may have been defective or insufficient, the case having been submitted on an agreed statement of facts, the trial court could render such a judgment as those facts warranted. See *Reynolds v. Reynolds*, 30 Kan. 91, 1 Pac. 388; and *Peters v. Bank*, 106 Kan. 1, 185 Pac. 892.

Defendants also contend that even if it be admitted that plaintiff obtained some minute form of interest in the Ford car when he obtained it from Lyster, he voluntarily surrendered possession to Sugg and thus permitted Sugg to defraud Williams; that he is not in court with "clean hands" and the rule should be applied that when one of two innocent persons must lose through the misdeeds of others, the one whose act or omission permits the loss to occur must stand the consequences (*Wiseman v. Richardson*, 154 Kan. 245, 118 P. 2d 605). Defendants argue that plaintiff Felts and Williams were equally at fault and that each should have known better than to perform as he did—plaintiff by purchasing the Ford car and accepting a defective certificate of title and assignment thereof—Williams by purchasing without receiving any certificate of title whatever. We fail to see where the parties are equally innocent or equally at fault. It is true that plaintiff was at least remiss in not procuring a fully sufficient certificate of title and assignment thereof, but that he did receive a certificate and assignment stands forth. Under it possession of the car was given to him and that possession he retained until it was taken away by the fraudulent act of Sugg. When Williams got the Ford car from Sugg he knew that Sugg had no certificate of title and there is no pretense Sugg or anyone for him ever delivered to Williams any documentary evidence of title of any kind or character. It will not do to say that the failure of Lyster, plaintiff's vendor, to give a sufficient certificate of title and assignment thereof to plaintiff was such an act or omission that Williams was an innocent person along with plaintiff and that plaintiff's act caused Williams' loss. Williams' act in buying from Sugg and not requiring a certificate of title and assignment, even though defective, was in legal effect about the same as though he had purchased a stolen car. The defendants' contention cannot be sustained.

And finally, defendants contend that in any event the trial court

erred in that part, of its judgment allowing recovery for the un- lawful detention of the Ford car in the amount of $440 for the reason that that sum exceeds the amount of damages pleaded. Reference to the record shows that plaintiff alleged he had sustained damages of $250 by reason of unlawful detention of the car. The record does not disclose that plaintiff ever sought to amend his petition to cover damages accruing after the filing of his petition or to conform to proof. The general rule is that a judgment for more than the pleadings show the plaintiff is entitled to recover is erroneous (*Loper v. The State*, 48 Kan. 540, 29 Pac. 687) and has been followed in actions and judgments in replevin (*Frankhouser v. Cannon*, 50 Kan. 621, 32 Pac. 379). See, also, *Pratt v. Brockett*, 20 Kan. 201; *Atchison T. & S. F. R. Co. v. Combs*, 25 Kan. 729; and *Kansas City L. & S. R. Co. v. Richolson*, 31 Kan. 28, 1 Pac. 138; all to the effect that a judgment in excess of the amount claimed is erroneous to the extent of the excess. It follows that the judgment should have been for the sum of $250 and no more.

In view of what has been said we do not find it necessary to discuss plaintiff's contentions that under the statutes pertaining to sales of motor vehicles, registered used car dealers are relieved from registering cars and obtaining and delivering certificates of titles and assignments to the same extent as is required of other persons.

The judgment of the trial court is modified by reducing the amount of the money judgment to $250 and, as modified, is affirmed.