No. 38,509

B. H. POTEET and SUPERIOR INSURANCE COMPANY, a corporation, *Appellees,* v. CHARLES SIMMONS, *Appellant.*

(240 P. 2d 147)

Opinion filed January 26, 1952.

*Joe T. Rogers,* of Wichita, argued the cause, and *Roy L. Rogers,* of Wichita, was with him on the briefs for the appellant.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky* and *George W. Holland,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action in replevin to recover possession of an automobile. Judgment was rendered for plaintiffs and defendant appeals. In a previous appeal it was held that the defendant could not join a third party as a defendant and seek to recover against it any damages he might sustain if the plaintiffs prevailed against him (see *Poteet v. Simmons,* 171 Kan. 86, 229 P. 2d 747).

Although the abstract does not disclose when the pleadings were filed, apparently after the decision above was rendered, plaintiffs filed their second amended petition, and defendant adopted as his answer thereto his answer to the amended petition. A trial by jury was waived. The trial court, after hearing evidence, made findings of fact and conclusions of law and rendered judgment for the plaintiffs.

The findings made by the trial court cover the following: On May 4, 1949, one Jay Brown purchased from the McCann Motor Company of Coffeyville, Kan., a new Mercury automobile and received a bill of sale for it. On May 7, 1949, for some reason not shown, the McCann Motor Company delivered to Brown another bill of sale for the same car. At an undisclosed date early in May, 1949, Brown made an application for a Kansas certificate of title, which was later issued on June 8, 1949. In the meantime Brown took the automobile to Texas and on May 17, 1949, filed with the tax collector of Dallas County an importer's certificate and an application for a Texas certificate of title, using the bill of sale from McCann Motor Company as evidence of his ownership. On June 1, 1949, Brown sold the automobile to the plaintiff Poteet, the transaction being handled through United Auto Sales of Dallas, Texas, to facilitate financing arrangements by Poteet. On that date the automobile had a Kansas license plate on it, but Poteet did not see it. Poteet paid a full consideration for the transfer to him and got possession of the car. On June 23, 1949, a Texas certificate of title was issued to Brown. On June 27, 1949, Brown assigned the certificate to United Auto Sales of Dallas and on the same day it executed an assignment to Poteet who applied for a Texas certificate

of title which was ultimately issued to him on July 19, 1949. However, on July 6, 1949, the automobile was stolen from Poteet's residence in Dallas, Texas, presumably by Brown, who, on July 7, 1949, sold it to McCandless & Dunn, partners engaged in the used car business in Wichita, Kan., and was paid $1,900 for it. On July 7, 1949, McCandless & Dunn sold and delivered the automobile to defendant Simmons. On July 12, 1949, Brown assigned his Kansas certificate of title to Simmons and Simmons applied for a Kansas certificate which was issued to him on July 27, 1949. On August 4, 1949, the plaintiff insurance company paid Poteet the sum of $2,095 pursuant to a policy of theft insurance and, at some undisclosed date, the company and Poteet commenced this action in replevin. The trial court found that the automobile could not be returned to plaintiffs and that its reasonable market value on July 7, 1949, was $2,500. It is noted that the record does not disclose why the automobile could not be returned, and also that there is no complaint of the finding. As matters of law the trial court concluded that when Brown put Poteet in possession, Poteet became the equitable owner and as between the two Poteet was entitled to possession; that when Brown sold to Simmons, the automobile was a stolen one and Simmons obtained no greater right against Poteet than Brown enjoyed; that Poteet, since July 7, 1949, was entitled to the return of the automobile and to damages for its unlawful detention; that the insurance company had a special interest by reason of payment under its policy of insurance; that since Simmons could not return the automobile to plaintiffs, they were entitled to its reasonable value with interest from July 7, 1949, and judgment was rendered accordingly.

Defendant's motion for judgment notwithstanding the verdict (judgment) and his motion for a new trial were denied and he perfected his appeal, specifying that the trial court erred in its rulings on the last mentioned motions, in fixing the value of the automobile at $2,500 and in refusing to render judgment in his favor. Appellees have moved that the appeal be dismissed for the reason the specifications are insufficient to present any question for review on appeal.

Treated in inverse order, the last specification amounts to nothing more than a statement the decision is wrong and presents no reviewable ruling (*Cimarron Co-Operative Equity Exchange v. Warner*, 166 Kan. 190, 200 P. 2d 283). The specification the trial

court erred in fixing the value of the automobile is not mentioned in the brief and is considered abandoned. Were there no other specifications, the appellees' motion would be sustained. However, inept though its title may be, the body of the motion for judgment notwithstanding the verdict, when there had been no verdict, refers to the findings made by the trial court, and in a very broad way may be said to raise the same question as the motion for a new trial, and the latter will be considered.

In his brief appellant, under a heading "Statement Of The Case" makes what purports to be the facts, but in which there is no reference whatever to the abstract as required by Rule 6 (1). This statement refers to events and occurrences which we cannot find in the abstract, is without any regard to the facts found by the trial court, and in general states the facts favorably to himself to support his argument. We shall not pause to point out inaccuracies, for our examination of the record as abstracted shows that the findings as made by the trial court are supported by the evidence.

Appellant's argument runs that Jay Brown, upon purchasing the automobile from McCann Motor Company on May 4, 1949, obtained a bill of sale and using it promptly applied for registration in Kansas and for a certificate of title, was issued license plates, and later received the certificate of title (June 8, 1949), all in compliance with the law of Kansas; that on July 7, 1949, Brown sold the car to McCandless & Dunn, second-hand dealers, and assigned the title in blank and delivered it and the automobile to them and upon their selling the automobile to appellant (on July 7) they filled in his name and he then applied for and received a certificate of title in his own name. He then says that plaintiff did not plead the law of Texas and therefore the presumption is that the law of that state is the same as in Kansas (not so, see G. S. 1949, 60-2878, 2879, 2880) and if Kansas law is applied Poteet got no title (apparently on the theory that when Brown sold to Poteet on June 1, 1949, Brown failed to notify Kansas authorities he had sold it). Appellant then contends that the Brown sale to Poteet in Texas was not good in that Brown failed to fully comply with the registration law of Texas in getting the Texas certificate of title and Poteet's purchase from him was a nullity. After directing attention to various decisions of Texas and Kansas, and arguing that Poteet knew the automobile had Kansas license tags on it when he purchased it (a statement contrary to the record) and that Poteet did not demand and receive from Brown the Kansas certificate of title (which the record

discloses Brown did not receive until after he had sold and delivered the automobile to Poteet) he says Poteet fraudulently participated with Brown in obtaining the Texas certificate of title without surrendering the Kansas certificate (a statement contrary to the record), and upon this premise, says that Poteet violated the law of Texas and the sale to him was void. Although conceding that Brown stole the automobile from Poteet in Texas on July 6, 1949, appellant argues that because Brown had a Kansas certificate of title when he sold to McCandless & Dunn on July 7, 1949, that that firm did not purchase from a thief or as stated in his summary, McCandless & Dunn were innocent purchasers for value, and obtained good title to the automobile which they conveyed to appellant; that Poteet violated the law of Texas, failed to comply with the law, got no title because of his failure to surrender the Kansas certificate of title; that he participated with Brown in fraudulently obtaining the Texas certificate of title and should not prevail. The premise for a good part of the above argument is against the record and cannot be sustained.

There is no doubt but that the law is that a party may maintain an action in replevin only where he pleads and proves that he is the owner of or has a special right in the property the possession of which is sought, and that he may maintain the action against anyone not having a better title and right to possession (*Felts v. Sugg*, 167 Kan. 488, 492, 207 P. 2d 460).

We shall first consider the question of Poteet's ownership of the car under the laws of Texas. In so doing it is not necessary that we again review the facts above detailed, nor that we go into great detail concerning the law of Texas providing for the registration of motor vehicles, issuance of certificates of title, and sales of motor vehicles. References here made are to the 1951 Cumulative Annual Pocket Part of Vernon's Annotated Penal Code of the State of Texas, Title 17. Under article 1434 it is provided, in part, that no person shall sell any used or second-hand vehicle required to be registered under the laws of Texas until the vehicle has been duly registered in the state for the current year and that the seller shall deliver to the transferee at the time of delivery of the vehicle, the license receipt issued for registration and the properly assigned certificate of title, and that whoever violates the act shall be guilty of a misdemeanor. Article 1435 provides that the transferee shall, within ten days of the transfer, file with the county tax assessor-collector the registration receipt and the properly assigned certificate of title. In

*Granger v. Ponder* (Civ. App.), 286 S. W. 668, it was held that violation of the two above articles did not make a sale void or prevent title from passing, and in *Moore v. Galey* (Civ. App.), 286 S. W. 679, it was held that a sale of a second-hand automobile by a dealer without compliance with the sections, did not make the sale void.

Article 1436 of the above title consists of 64 sections, all dealing with certificates of title to motor vehicles. Section 10 defines a used car as a motor vehicle that has been subject to a first sale whether within Texas or elsewhere. It is conceded in the case at bar that the automobile involved was a used car under this section. Section 17 defines an "importer" as any person except a manufacturer who brings any used motor vehicle into the state for the purpose of sale within the state. Section 23 defines the term "importer's certificate" to be a certificate on a form prescribed by the department for each used motor vehicle brought into the state for purposes of sale within the state and that such importer's certificate must be accompanied by such evidence of title to the motor vehicle as the department may require. Section 26 defines the term "designated agent" to be the county tax collector who may perform duties under the act. Under section 27 it is provided that before selling or disposing of any motor vehicle required to be registered or licensed in the state, that the owner shall make application to the designated agent in the county of his domicile upon form to be prescribed by the department, for a certificate of title for such motor vehicle, and under section 29 no such designated agent shall issue a receipt for a certificate of title to any used vehicle imported into the state for the purpose of sale within the state without the delivery to him by the applicant of an importer's certificate, properly assigned by the importer upon a form to be prescribed by the department. Section 33 provides that no motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the department before a notary public and setting forth the requirements of an accompanying affidavit with respect to license. Section 52 provides that it shall be unlawful to acquire any title in a motor vehicle registered or licensed in the state without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon confirmation of the purchase, be transferred upon such form as may be provided by the department. Section 53 provides that all sales made in violation of the act shall

be void *and no title shall pass until the provisions of the act have been complied with.*

There have been many cases before the courts of Texas dealing with various sections of the act. In *McKinney v. Croan,* 144 Tex. 9, 188 S. W. 2d 144, it was held that the act did not require the purchaser of a motor vehicle to obtain a certificate of title from the state highway department immediately upon purchasing the vehicle; and in *Fulcher v. Hall* (Civ. App), 170 S. W. 2d 321, it was held that an automobile dealer who acquired an automobile from a transferor who signed a blank application for a certificate of title had the legal right to have the transferor obtain and transfer title to the dealer; and in *McKinney v. Croan,* supra, it was held that when the plaintiff was in rightful possession of a truck under authority from the registered owner at the time a truck was stolen he was entitled to maintain an action against a defendant who had purchased the truck from a thief to recover such truck notwithstanding the registered owner, in endorsing the certificate of title did not insert the name of the future purchaser.

In support of his contention that appellees did not obtain a sufficient certificate of title under the law of Texas, appellant relies principally upon *Ball Bros. Trucking Co. v. Sorenson* (Tex. App), 191 S. W. 2d 908. Briefly stated, Buchanan Motors of Wichita, Kan., owned an automobile on which it had procured a Kansas certificate of title. It sold the automobile to one Dawdy and assigned the certificate of title to him, his address being stated thereon as Fort Worth, Texas. Dawdy, representing himself to be a resident of Topeka procured a loan thereon from Sorenson of Topeka, but the certificate of title was not assigned to Sorenson, nor was any new certificate obtained. Dawdy shortly brought the automobile to Texas as an "importer" and procured a Texas certificate of title which showed no liens, and upon the strength of it sold the automobile to Ball Bros. Trucking Co. which procured a certificate of title showing a lien in favor of Motor Investment Co. of Fort Worth. Sorenson discovered that Dawdy was in Texas and brought suit to foreclose his lien. Without reviewing the reasoning of the court of appeals, it may be said shortly that it was held that Dawdy unlawfully concealed the plaintiff's lien in procuring his certificate of title and that one who holds a valid lien in another state is not bound to watch the movements of the vehicle in order to ascertain into what other state it might be taken nor compelled to file a copy of his mortgage in such state to prevent loss of his lien, and that

one purchasing or lending money on the security of the vehicle imported into the state has a duty to see that the seller has complied with the Texas certificate of title law, and, if derelict in such duty, acts at his peril. Other decisions of similar effect will not be reviewed, for there is no question here but that at the time Brown registered the automobile in Texas he was the absolute owner of the involved automobile, there were no liens against it, and that cases dealing with such a situation as is disclosed in the Ball Bros. case are hardly in point here.

A situation analogous to that presently before us was before the court in *Manning v. Miller* (Tex. App.), 206 S. W. 2d 165. Miller purchased an automobile in Louisiana and took it, with Louisiana license plates thereon, to Port Arthur, Texas, where he sold it to Manning, executing an application for a Texas certificate of title which he endorsed in blank and delivered to Manning with a bill of sale. On the evening of the same day, without Manning's consent, Miller took the automobile to San Antonio, Texas, where he undertook to sell it to Shemaria for $1,250. Shemaria paid the money and received possession of the car along with a power of attorney and an instrument described as a bill of sale. A few days later the automobile was seized as being stolen. Sometime thereafter Manning obtained from Miller a new application for a Texas certificate of title and one was issued by the State of Texas. In a suit to determine ownership the trial court held in favor of Shemaria, but on appeal the court of appeals reversed, saying that neither Manning nor Shemaria had complied fully with the requirements of the certificate of title act; that the fact Miller stole his own automobile did not prevent it from being a stolen one, and that after Miller had delivered the car to Manning and had been paid therefor, Manning became lawfully entitled to possession as against Miller even though the legal title had not passed, and that when Shemaria attempted to purchase the automobile from Miller he was attempting to purchase a stolen automobile and acquired no title thereto, and further stating that Shemaria had not complied with the certificate of title act, said:

"Regardless of what has been said above, Manning is now and was at the time of the trial the holder of a certificate of title issued to him by the State Highway Department, and no other party to this suit has shown a better title to this automobile." (l. c. 167.)

Appellant and appellees both direct attention to decisions of this court where the title to a motor vehicle was involved. None of them

treat a situation such as is presented in this appeal and we shall not devote any space to reviewing those decisions and pointing out reasons why they are not controlling here.

In the case at bar it appears that Brown, then the absolute owner of the involved automobile free from the claims of any other person, brought it into Texas, made an application for an importer's certificate on the prescribed form, made application for registration and a certificate of title and thereafter sold the car through the United Auto Sales of Dallas to Poteet and delivered possession of the car to him, and that about three weeks thereafter the Texas certificate of title was issued to Brown and about four days thereafter assigned by Brown to the United Auto Dealers, who in turn reassigned it to Poteet, who in turn promptly applied for a Texas certificate of title which he did not receive until after the automobile had been stolen from him. When Brown first sold the car to Poteet and put him in possession, at the least Poteet became the equitable owner of the car and entitled to force Brown to furnish him with the proper certificate of title. Brown did subsequently furnish him a certificate of title that complied with the laws of the State of Texas. Poteet had not only possession of the automobile but he had Brown's certificate of title properly assigned to United Auto Sales and by the United Auto Sales to him and he had made application for a certificate of title in his own name. In our opinion there was sufficient compliance with the laws of Texas by Brown in procuring a certificate of title on the automobile and in his name, in transferring it to the United Auto Sales and in the United Auto Sales assigning it to Poteet and in Poteet's procuring the certificate of title that Poteet was entitled to possession against Brown and anyone claiming under him.

Appellant concedes that after Brown sold and delivered the automobile to Poteet as above set forth, he stole it from Poteet and brought it to Kansas where he purported to sell it to McCandless & Dunn at Wichita. Appellant, however, does not direct attention to any fact or to any rule of law tending to prove or show that Brown, who had no title to the automobile after he had sold and delivered it to Poteet, could by any device, invest McCandless & Dunn with a better title than he had. Appellant's purchase from McCandless & Dunn gave him no better title than that firm had.

We do not overlook the fact that through his scheming Brown was able to get a Kansas certificate of title to the automobile which

he used to defraud McCandless & Dunn.  The present action however does not and cannot reach any question as to how or why Brown was enabled to perpetrate the fraud and we shall not comment thereon.

The judgment of the trial court is affirmed.

HARVEY, C. J., dissents.