No. 39,933

MABEL BAKER, et al., *Appellees,* v. CITY OF LEOTI, a Municipal Corporation, et al., *Appellants.*

(292 P. 2d 720)

Opinion filed January 28, 1956.

*Claude I. Depew,* of Wichita, and *Herschel Washington,* and *Ben Hartloff,* both of Leoti, were on the briefs for the appellants.

*D. B. Lang,* of Scott City, argued the cause, and *James W. Wallace,* of Scott City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This was an appeal from the judgment of the trial court enjoining and restraining the city of Leoti from making certain street improvements and from levying tax assessments therefor. Plaintiffs have cross-appealed from a part of the same judgment holding that one of the protestors was not a resident owner of real property at the time of his protest.

The following salient facts were gleaned from the record and are included for clarity in understanding the background of this appeal:

On June 22, 1953, the Leoti city council adopted a resolution whereby it was declared to be a public necessity to curb and gutter (except where already curbed and guttered) and otherwise improve:

Sixth street from north line of Earl street to south line of H street.
Logan street from east line of Fourth street to west line of Seventh street.
M street from west line of city limits to east line of Seventh street.
I street from the east line of Wyoming to line of Seventh street.

The resolution further provided:

"That the owner of property adjacent to the street improvements described in each section of this resolution shall have the right to file written protests against such improvements being made; and as to the street improvements described in each section of this resolution where the resident owners of at least one-half of the property liable for taxation do not file written protests against the improvements being made in that particular section within twenty days from the last publication of this resolution, they shall be constructed and made in accordance with such plans and specifications."

Within twenty days after the last publication, which was on July 2, 1953, the resident owners of more than one-half of the square feet or area liable for taxation for the contemplated improvements filed their protests.

The petition alleged: The resolution failed because it was adopted in violation of the express written opposition of a majority of the resident owners of the square feet or area liable for taxation therefor which protests had been filed within twenty days after July 2, 1953; any intended or threatened entrance into a contract or contracts would result in the levying of an illegal tax and the acts done or threatened were illegal, arbitrary, capricious, discriminatory and in bad faith; such acts, and the subsequent intended or threatened acts of the defendants, were unjust and inequitable as to plaintiffs, who were the owners of land which abutted the streets about to be improved as a result of the resolution; defendants should be restrained and enjoined perpetually from entering into the threatened contract or contracts.

Defendants' answer contained a general denial and as a further defense alleged that contracts for curbing and guttering I, M, Logan, and Sixth streets had been entered into on November 10,

1953, and there had been substantial performance according to the terms of the contracts.

With this synopsis of the pleadings in mind, we turn next to the stipulation of facts by the parties, which was as follows:

"1. That all of the proceedings which are the subject of this law suit were and are legal and pursuant to law except as the same may be affected by matters here in controversy as follows:

"A. Did the resolution 'That it is hereby declared to be a public necessity to curb and gutter (except where already curbed and guttered) and otherwise improve, etc.' eliminate all property adjacent to streets which has been previously curbed and guttered from the property subject to special assessment, i. e., is the property which was previously curbed and guttered, to be disregarded in computing the total area to be improved and (b) if so, is it to be disregarded as to protests?

"B. Was A. E. Freeland, record owner of Lots One (1) and Six (6) in Block Six (6) in Cowans addition to the City of Leoti, a resident of the city of Leoti between July 2, 1953, and July 22, 1953 (both dates inclusive)?

"2. That the total area, the area owned by protesting resident owners, and the area adjacent to streets previously curbed and guttered (except as the same may be altered by the findings of the court as to the residence of A. E. Freeland as set out in paragraph 5 hereof) is as follows:

| | "Total Area | Protested Area | Previously C & G |
|---|---|---|---|
| "I Street | 801,000 sq. ft. | 254,250 sq. ft. | 450,000 sq. ft. |
| "6th Street | 722,400 sq. ft. | 313,950 sq. ft. | 180,000 sq. ft. |
| "M Street | 808,200 sq. ft. | 262,500 sq. ft. | 90,000 sq. ft. |
| "Logan Street | 287,100 sq. ft. | 125,700 sq. ft. | None |

"3. That the resolutions set out in plaintiffs' petition was published according to law and resident property owners had from July 2 to July 22, both dates inclusive, within which to file protests.

"4. That before this suit was filed and on November 10, 1953, the City of Leoti entered into a contract with the Rexroad Construction Company which contract provided for the curbing, guttering and otherwise improving the streets involved in this litigation.

"5. That in the event the court finds that A. E. Freeland was a resident of the City of Leoti, Kansas at the time specified in paragraph 1 B hereof, then this protest should be added to the protested area as follows: 6th St. 10,350 sq. ft.—Logan St. 20,700 sq. ft.

"6. That all the curbing and guttering provided for under the contract has been completed, and all the street area subject to this litigation, i. e., that which was previously curbed and guttered and that which was not, has been sanded and graded, in preparation for oiling next spring when the ground has sufficiently thawed.

"7. . . . the protest of A. E. Freeland has not been considered since the City contends that Freeland was and is a non-resident."

Among others, the trial court in its journal entry found that certain protests of resident owners had been filed according to statute

between July 2, 1953, and July 22, 1953; that the area curbed and guttered on Sixth street prior to July 2, 1953, should not be computed in the sufficiency of the protests for the reason the resolution authorized only the curbing and guttering of those portions of Sixth street and I street which had not already been curbed and guttered; that the protested area of M street was not sufficient; that A. E. Freeland was the owner of property on Logan street, but he was not a resident owner of real property between July 2, 1953, and July 22, 1953, and the protested area with respect to Logan street was therefore insufficient. The journal entry included an order restraining and enjoining the defendants from contracting for the curbing and guttering or otherwise improving Sixth and I streets and from doing any further act that would result in the levy of any tax or assessment against the property involved.

Both parties filed motions for new trial. Each motion was over-ruled. This appeal and cross-appeal followed.

Appellants' specifications of error were substantially that the trial court erred in its judgment regarding Sixth and I streets that the resolution did not grant the city authority in addition to curbing and guttering, to grade, sand, crown, and oil and that the areas adjacent to these streets which, prior to the resolution, were curbed and guttered only should not be considered in computing the protests, all despite the inclusion of "and otherwise improve" in the resolution; that it was error to enjoin and restrain appellants from entering into a contract or contracts for curbing and guttering or otherwise improving Sixth and I streets and from making any tax or assessment therefor since contracts had been entered into prior to the filing of this suit; and that it was error to overrule their motion for new trial.

Appellees' specifications of error were the trial court erred in its judgment that A. E. Freeland, also known as Arthur E. Freeland, was not a resident owner of real property on Logan street between July 2, 1953, and July 22, 1953, thereby causing the protested area thereon to be insufficient; and that it was error to overrule appellees' motion for new trial.

We shall first dispose of appellants' contention that the provision of the resolution for curbing and guttering and otherwise improving the streets would cover not only those portions of the streets involved which had not been previously curbed and guttered, but also those portions which had been previously curbed and guttered.

Appellants further contend that grading and crowning preparatory to oiling was covered by the words "otherwise improve," and this would result in a greater portion of the streets being subject to assessment, would increase the area affected by improvements, and would require a greater protested area to defeat the resolution. By reason of this it is contended by appellants that the trial court should not have enjoined appellants as it did because the protests would not have been sufficient.

The above theory of appellants cannot be followed for the reason that the court had before it a stipulation of facts whereby all parties had agreed to and set out the total area of square feet involved, the protested area, and the area previously curbed and guttered and it could render only such judgment as those facts warranted. (*Felts v. Sugg,* 167 Kan. 488, 493, 207 P. 2d 460.)

Stipulation of fact No. 6 stated that sanding, grading, and preparation for oiling had been done on parts previously curbed and guttered, but the record does not show this matter was definite or in derogation of the computed areas set out in stipulation of fact No. 5, referred to above, nor that anything was presented on the motion for new trial regarding this particular matter and we, therefore, cannot consider it so far as this appeal is concerned.

In considering the claim of appellees on their cross-appeal that the protest of A. E. Freeland was not considered by the trial court, that he was a resident owner of real property located on Sixth street and Logan street and his protest should have been computed so far as Logan street was concerned, we agree if this had been done it would have defeated the resolution as to Logan street. However, stipulation of fact No. 5 was not conclusive of this fact and the trial court had to determine by the evidence whether A. E. Freeland was a qualified protestor. This contention of appellees on their cross-appeal was brought before the trial court by the deposition of A. E. Freeland, also known as Arthur E. Freeland, at the hearing on appellees' motion for new trial. It was disputed matter and the trial court ruled that Freeland was not a resident owner of real property. As a result appellees' motion for new trial was overruled.

Under our statute (G. S. 1949, 12-602) any affected taxpayer must be a resident owner of real property to be a proper protestor. The statute, in part, reads:

". . . and if the resident owners of more than one-half of the property

liable for taxation therefor shall not . . . file . . . their protest against such improvement, the governing body shall have power to cause . . . such improvement to be made. . . ."

See, also, *Horejsi v. City of Holyrood*, 171 Kan. 190, 231 P. 2d 215.

An additional statute cited by appellees is G. S. 1949, 77-201, *Twenty-third*, which reads in part:

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning. . . ."

Appellees claim the above was complied with by Freeland's deposition, which made him a resident owner of real property. The deposition in brief showed that he had moved to Oklahoma and bought a home there in 1951; that his job was terminated in Oklahoma, but he still owned some oil holdings there; he sold his house in Oklahoma and he and his family returned to Leoti; he lived with his mother in Leoti and was so living during the period from July 2, 1953, to July 22, 1953; he had intended to make Leoti his residence; he had not intended to make Oklahoma his residence until he moved there about Thanksgiving of 1953.

We do not deem it necessary to set out all of the deposition, but the last questions that were asked and answered as they appeared in the deposition were as follows:

"Q. That is the same situation you faced when you came to Nowata in 1951, wasn't it? A. That was a temporary job. When I came down it was supposed to be only a few months. It developed that it came to be more or less of a permanent thing. I didn't want to be away from my family. So I bought a house and moved down temporarily. It wasn't my intention to stay very long then in Oklahoma when I came here.

. . . . . . . . . . . . . .

"Q. When things got rough you sold it, or when your employment was terminated? A. I sold it and moved back to Leoti, INTENDING TO LIVE THERE. But I made connections and friends while I was here and I liked to live in Oklahoma, so after the job I moved down. It wasn't my intention when I moved out there to ever come back to Oklahoma again and continue to this day, I did."

It is apparent from the journal entry that the trial court considered this testimony and no abuse of discretion was shown on the part of that court in refusing to sustain the motion of appellees for a new trial on the single issue of Logan street. This court said as recently as in *Parker v. Allen*, 171 Kan. 360, 233 P. 2d 514, that,

". . . action of a trial court in granting or in denying a new trial as to

only one of the issues involved in the case rests in its judicial discretion and that its decision with respect thereto will not be disturbed by this court on appellate review unless, upon examination of the entire record, it concludes there has been an abuse of that discretion . . ," (p. 362.)

and we find nothing here to cause us to deviate from or change that rule. The trial court did not err in overruling appellees' motion for new trial.

The judgment is affirmed.