(673 P.2d 1193)

No. 55,756

WENTZ EQUIPMENT COMPANY, INC., *Appellant,* v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellee.*

Opinion filed December 29, 1983.

*James E. Switzer* and *Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, for the appellant.

*Phillip R. Fields,* of Gott, Young & Bogle, P.A., of Wichita, for the appellee.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge, Assigned; and FREDERICK WOLESLAGEL, District Judge, Retired, Assigned.

WOLESLAGEL, J.: Wentz Equipment Company, Inc., appellant (Wentz), purchased equipment which was delivered to an initial carrier in good condition but loaded improperly by the shipper or the initial carrier. The evidence did not identify the loader. When the shipment was received in damaged condition, Wentz sued Missouri Pacific Railroad Company, appellee (MoPac), the final carrier. The suit is governed by the Interstate Commerce Act, 49 U.S.C. § 11707 (Supp. V 1982). The damage occurred in transit. While first finding for Wentz, the trial judge entered summary judgment for MoPac on rehearing, but we find that the trial judge was right the first time and reverse.

Wentz complains (1) that on rehearing, statements were made by MoPac that at least implied the shipper did the loading and the judge accepted this improperly because the case was submitted on stipulated facts only, and (2) that the Interstate Commerce Act was incorrectly applied to the facts when the trial judge concluded that the shipper did the loading and Wentz thereby acquired the burden of proving the damage was caused

by acts of the carrier instead of the defective loading. The issues will be discussed in that order.

## Facts

Except for key items which will be set out verbatim from the stipulation, the agreed written stipulation of facts recited that 19 crates of equipment were delivered by a manufacturer or jobber in Harvard, Illinois, to an initial carrier for delivery to MoPac's ramp in Chicago. From there, the shipment came "piggy-back" by MoPac to Topeka, the final destination. The material parts of the key stipulations are:

"3. At some point during the process of shipment between Harvard, Illinois and Topeka, Kansas, physical damage was caused to the property shipped, in the amount of $5,056.93."

"10. To the best knowledge and belief of the parties, the damage to the contents was caused by movement of the crates during shipment, which could have been avoided by securely fastening the crates to the walls and floor as called for by certain A.A.R. Loading Rules."

"11. Loading of the trailer was not performed by defendant Missouri Pacific Railroad Company or by anyone working under their direction or control. There is no evidence to indicate at what point during the shipment between Harvard, Illinois and the ultimate point of destination, that the physical damage was sustained to the property in the sealed trailer."

## Binding Effect of Stipulation

As will be shown in the part of this opinion under the heading Application of the Interstate Commerce Act, the loader is in no way identified in the statement of facts. It was not proper for the trial court then, or for us now, to consider any evidentiary claims beyond the stipulation. When a stipulation of facts is agreed to by the parties, a trial court can render only "such judgment as those facts warranted." *Baker v. City of Leoti,* 179 Kan. 122, 126, 292 P.2d 720 (1956). "Evidence of facts not within the issues agreed on is not admissible." 83 C.J.S., Stipulations § 22. "Valid stipulations as to evidence are binding on the court, which is bound to enforce them; and *the court cannot go beyond the terms of the stipulation.*" 83 C.J.S., Stipulations § 23. Emphasis added. "[O]rdinarily, as we have said more than once, courts are bound by stipulations of the litigants." *In re Estate of Maguire,* 204 Kan. 686, 691, 466 P.2d 358, *modified on other grounds* 206 Kan. 1, 476 P.2d 618 (1970). The only exceptions to this rule that come to our minds are (1) stipulations as to controlling law, 204 Kan. at 691, and (2) stipulations as to jurisdiction.

Thus, what the trial court was working with is called (perhaps somewhat archaically, and hence not often) a "case stated" or an

"agreed case": a "statement of agreed facts containing all material facts upon which rights of parties were to be determined." 6 Words and Phrases 402. We have before us a "case made." The contents of a trial court record that are "necessary to enable the appellate court to pass on the question involved." 6 Words and Phrases 391. We are, of course, also faced with the same "case stated" as was the trial court. The submission of the case by stipulated facts affords us the same opportunity—and imposes on us the same obligation—to examine and consider the evidence as the trial court had. *Stith v. Williams,* 227 Kan. 32, 605 P.2d 86 (1980); *Victory Nat'l Bank of Nowata v. Stewart,* 6 Kan. App. 2d 847, 849, 636 P.2d 788 (1981).

## Application of the Interstate Commerce Act

The issue as to the application of the Interstate Commerce Act, 49 U.S.C. § 11707 (Supp. V 1982), we believe is not precisely stated by the parties as they predicate the issue on negligence in loading (by the shipper in Wentz's statement, by someone other than a common carrier in MoPac's statement). The stipulations of fact, however, carry neither information nor inference as to who loaded the "piggy-back" shipment. It does not even say whether the crates were so loaded at Harvard or at Chicago. All we have is that the crates were not properly secured to the walls and floor of the sealed trailer, that neither MoPac nor anyone under their direction did the loading, and that there was no evidence as to where the damage occurred, but it was someplace between Harvard and Topeka, and caused by movement of the crates in shipment.

So a more accurate statement of the issue would be whether Wentz established a prima facie case of liability under the Act, and if so whether it was error for the court to hold that Wentz had the burden of *proving* (by more than just the prima facie case) that some carrier caused the damage.

The relevant parts of the Act provide:

"(a)(1) A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission . . . shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering

carrier, or (3) another carrier over whose line or route the property is transported. . . .

. . . .

"(b) The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidence by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person." 49 U.S.C. § 11707 (Supp. V 1982).

Under this provision, popularly known as the Carmack Amendment:

"[A] shipper must sue either the carrier issuing the bill of lading or the carrier delivering the goods to the final destination. 49 U.S.C. § 11707(a)(1). Either of these carriers will be liable for damage caused by *any carrier used during the trip.* The initiating or delivering carrier may in turn seek recovery from the carrier responsible for the loss. 49 U.S.C. § 11707(b)." *S.C. Johnson & Son v. Louisville & Nashville R. Co.,* 695 F.2d 253, 256-57 (7th Cir. 1982). Emphasis added.

To establish a prima facie case against a common carrier, a shipper or receiver of goods must show: (1) delivery of the goods to the carrier in good condition, (2) arrival of the goods in a damaged condition at the final destination, and (3) the amount of damage. The burden then shifts to the carrier to prove that it was not negligent and that the damage was caused by one of five exceptions: (1) an act of God, (2) an act of the public enemy, (3) an act of the shipper, (4) an act of the public authority, or (5) the inherent nature or vice of the goods. *Missouri P. R. Co. v. Elmore & Stahl,* 377 U.S. 134, 138, 12 L.Ed.2d 194, 84 S.Ct. 1142, *rehearing denied* 377 U.S. 984 (1964); *S. C. Johnson & Son v. Louisville & Nashville R. Co.,* 695 F.2d at 256; *Plough, Inc. v. Mason and Dixon Lines,* 630 F.2d 468, 470 (6th Cir. 1980).

MoPac claims it is free from liability because the damage was caused by "an act of the shipper," namely improper loading. The stipulation gives no support for this claim. Rather, it only provides where the damage occurred—in transit. So we must conclude the goods were undamaged when loaded. Under the Act, Wentz made a prima facie case through use of the stipulation, and under *Missouri P. R. Co.,* MoPac then had the burden of proving the shipper did the faulty loading and that it was not negligent, 377 U.S. at 138. But it had no evidence, only improperly broad argument of counsel.

That would be enough to say, except that both parties rely heavily upon *Masonite Corporation v. Norfolk and Western Railway Company,* 601 F.2d 724 (4th Cir. 1979). The case is not in point and, strictly construed, it supports neither. Masonite had been shipping plywood in badly packed containers which caused Norfolk handling problems. Norfolk told Masonite it must thereafter send the containers to Norfolk's special inspection facility. Masonite didn't, and a later shipment fell from Norfolk's flatcar and damaged another car.

The trial court held Masonite improperly loaded and that the routine inspection actually conducted by Norfolk discharged the railroad of its duty. In vacating this judgment, the Court of Appeals remanded for a setting out of facts and conclusions as to possible negligence of Norfolk in failing to take measures to discover that Masonite disobeyed the directive.

*Masonite* thus turns upon proven improper loading by a shipper being undeterminative if a carrier does not check for compliance with his loading mandate to the shipper. To the extent the language supports anyone, it supports Wentz:

"[A] carrier is liable for all damage sustained by goods in transit unless it can prove that the loss was due *entirely* to an excepted cause, such as an act of the shipper. When the shipper shows that goods were damaged, the carrier has the burden of proving both that the damage was attributable to an excepted cause and that the carrier was free from negligence." 601 F.2d at 728. Emphasis added.

Reversed and remanded with directions to enter judgment for plaintiff.