GEORGE S. HOWELL, *Appellee*, v. JAMES W. GARTON, *Appellant*.

No. 16,532.

SYLLABUS BY THE COURT.

WORDS AND PHRASES—*"Unknown Heirs"*—*Publication Service.* The term "unknown heirs," as used in the sections of the code providing for service by publication in cases relating to real property and where the relief demanded is to exclude defendants from any interest, title or estate in real property, means all kinds of heirs, including heirs of heirs of such defendants as well as the legatees of heirs.

Appeal from Gray district court; GORDON L. FINLEY, judge. Opinion filed May 7, 1910. Reversed.

*Thomas A. Scates,* and *Albert Watkins,* for the appellant; *E. H. Madison,* of counsel.

*Bennett R. Wheeler,* and *John F. Switzer,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:  This case involves the meaning of the term "unknown heirs," as used in the sections of the code which provide for service by publication in cases relating to real property and where the relief demanded is to exclude defendants from any interest, title or estate in the real property.   The contention arises over the effect to be given a judgment which purports to quiet the title to a tract of land formerly owned by Abbie A. Little.   She died intestate in 1895, leaving her daughter, Hattie A. Davis, as her sole heir.   Hattie died in Pennsylvania in 1903, leaving a will, in which she gave all her property to her husband, James M. Davis.   In 1903 the will was admitted to probate in Pennsylvania, but no record of it was made in Kansas until after the judgment referred to had been rendered, nor until September 30, 1907.   On July 1, 1905, F. M. Luther, who had obtained a tax deed to the land, brought an action to quiet his title as against Abbie A. Little, if living, or, if dead, against her unknown heirs, and on September 1, 1905, a judgment as prayed for was rendered.   In 1906 Luther conveyed the land to James W. Garton, who purchased without notice of the death of Mrs. Little or the existence of the will of her daughter.   On August 1, 1907, James M. Davis made a quitclaim deed to the land to George S. Howell, who brought this action of ejectment on October 3, 1907.   If the judgment quieting title is valid, Davis had nothing to convey and Howell acquired no interest in the land.   Instead of applying to the court to set aside the judgment and let him in to defend, under section 77 of the code (Gen. Stat. 1901, § 4511; Code 1909, § 83), he chose to treat the judgment as void.   His contention is that as Hattie A. Davis, the immediate heir to Abbie Little, was dead when the action against Mrs. Little and her unknown heirs was begun, no one was brought into

court, no interest was affected by the action, and as the judgment reached no one it was therefore open to collateral attack by Davis or his grantee.

The statute applicable to service by publication in cases of this character at the time this action was brought provides, among other things, that "the plaintiff may have service by publication upon said defendants or any of them, as though the defendants or any of them were alive at the time of the commencement of such action, and may also have service upon the unknown heirs, devisees, administrators, executors and trustees of any such defendants, as though the defendants were dead at the beginning of such action, and the service shall be had, proof made and decree rendered as hereinafter set out." (Laws 1905, ch. 326, § 1.) Does the term "unknown heirs," as used in the statute, apply to an heir of an heir, or rather to anyone in the line of succession from the deceased person? The word "heir" is sometimes used in its strict primary sense as including only one to whom an estate had already descended from a deceased ancestor, while in other cases it is applied to one whose ancestor is living. It is sometimes held to mean those who take only by right of blood relationship, and in other cases covers adopted children and persons not heirs of the body who take by operation of law. It has been used in a limited sense to designate children alone, or in a more comprehensive sense to include children and grandchildren, and also husband and wife. It has been held to include legatees and next of kin, as well as other classes of those who may become entitled to the property of another upon his death, the construction in each case depending upon the intention with which the term was used in the instrument or statute, and that is to be determined largely from the context of the instrument or statute and the circumstances surrounding or inducing the execution or enactment of the same. (21 Cyc. 408.) The context and

32—82 KAN.

purpose of an instrument or a statute in which the term is used may indicate clearly that it is used in a limited sense, or it may show plainly that it is used in a comprehensive sense, including heirs of all degrees. So it has been decided that "the word heir is not limited in its meaning to one to whom an estate of inheritance has descended from his immediate ancestor, but a person is the heir of one from whom he has inherited by several successive descents." (*Castro v. Tennent,* 44 Cal. 253, syllabus.) In interpreting an Illinois statute which prohibited a party from testifying in a case where a party sues or defends as heir of a deceased person it was held that the word "heir" should be taken in its general and comprehensive sense, and that it included "the heirs of heirs *ad infinitum.*" (*Merrill et al. v. Atkin,* 59 Ill. 19, syllabus. See, also, *McKinney v. Stewart,* 5 Kan. 384; *Dodge v. Beeler,* 12 Kan. 524; *Ewing v. Barnes,* 156 Ill. 61; *Brooks v. Evetts,* 33 Tex. 732; *Barber v. Pittsburgh &c. Railway,* 166 U. S. 83; *Howell v. Ackerman, &c.,* 89 Ky. 22; 15 A. & E. Encycl. of L. 320.)

The history and purpose of the statute indicate that the legislature used the term "unknown heirs" in its broader and more comprehensive meaning. At first the code provided for service by publication on unknown heirs of any deceased person without naming them. (Gen. Stat. 1868, ch. 80, § 78; Gen. Stat. 1901, § 4512.) Then there was a later provision that if it could not be ascertained whether the owners of the record title to land were living or dead service might be made as though they were alive, and upon the unknown heirs of such defendants as though defendants were dead. (Laws 1903, ch. 385.) Afterward, in 1905, the statute was amplified, and as the title indicates was intended to cover not only nonresidents of the state but persons whose residence is unknown, whether they were within or without the state. (Laws 1905, ch. 326.) Some modifications of these provisions were

Howell v. Garton.

made in chapter 257 of the Laws of 1907, and that statute appears to have been substantially reënacted in the code of 1909. (§§ 79, 80.)  The manifest purpose of these changes was to enable the parties effectually to clear up and adjust the title to real property, and to that end facilitate the bringing into court of those claiming or who might claim an interest adverse to the occupying plaintiff.  If the statute only applies to immediate heirs it would be ineffectual in all cases where the immediate heir was dead and plaintiff was unable to ascertain that fact.  The more reasonable view is that the act was intended to cover all who were in line of inheritance—those entitled to take by succession from generation to generation—and includes the heirs of heirs.  Following this liberal rule of interpretation, the term includes all who take real property by reason of the death of the owner, and it therefore fairly includes legatees as well as those who take by descent.  All the property of Hattie A. Davis passed by her will to her husband, and, there being no children, all of her property would have passed to him if she had died intestate.  The court acquired jurisdiction by the constructive service which justified it in the judgment that was rendered, by which both he and his grantee are bound.

It follows that the judgment must be reversed, with directions to enter judgment in favor of appellant.