No. 39,842

ALLAN ROGER MEENEN, *Appellant,* v. LUDOLPH MEENEN, also known as L. E. Meenen; FRITZ MEENEN, also known as F. H. Meenen; BERTHA MEENEN GERRIETS, HENRY J. MEENEN, FRIEDRICK MEENEN, HENRIETTA MOREY, *Appellees.*

(289 P. 2d 766)

Opinion filed November 12, 1955.

*C. Vincent Jones,* of Clay Center, argued the cause, and *Wayne W. Ryan,* of Clay Center, was with him on the briefs for the appellant.

*W. M. Beall,* of Clay Center, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for the partition of certain real property, and for an accounting of rents and profits. The appeal by plaintiff is from an order of the trial court overruling his demurrer to certain parts of the defendants' answer. The pleadings may be summarized, and quoted, as follows:

The petition filed June 29, 1954, was in two counts. In the first count it was alleged that plaintiff is a resident of Nebraska; that

Johanna Meenen died, a widow, a resident of Clay County, Kansas, July 11, 1934, intestate; that her estate was never administered upon; that she was the mother of six children, three of whom were living at the time the action was brought: a daughter, Bertha Meenen Gerriets, and two sons, L. E. Meenen and F. H. Meenen. That a son, Bajo Meenen, died in 1893, a single man, without issue; that another son, Peter J. Meenen, died intestate in May, 1930, leaving as his sole issue, a son, Allan Roger Meenen, the plaintiff herein; that a third son, John H. Meenen, a resident of Clay County, Kansas, died intestate June 23, 1942, leaving as his sole issue, two sons, Henry J. Meenen and Friedrick Meenen, and a daughter, Henrietta Morey. That at the time of the death of Johanna Meenen she owned certain described real estate in Clay County, Kansas, which was not a homestead and was subject to partition among the living children and grandchildren, in shares set out in the petition, and should be set out to them in severalty, or if the same could not be done without manifest injury, the land should be sold and the proceeds divided, as provided by law.

In the second cause of action the allegations of the first cause of action were made a part thereof, and it was alleged that since the death of Johanna Meenen, F. H. Meenen, as co-tenant, for the benefit of himself and all the other co-tenants, had been handling the real estate, collecting the rents and profits therefrom, holding the same in trust for the benefit of all co-tenants, paying the taxes, and had collected more than $30,000. which belonged to all the co-tenants; that at all times F. H. Meenen, and all other defendants, recognized that plaintiff had the same share in the funds which had been so accumulated; that his share in the $30,000. was $6,000; that on June 7, 1954, F. H. Meenen, on behalf of himself and the other co-tenants, turned over to plaintiff $2,000. on said $6,000, and failed and refused to turn over to him any more, and gave as his sole excuse that plaintiff's father, Peter J. Meenen, had owed a note to Johanna Meenen, which note was dated March 1, 1928, for $8,750. and bore no interest. That since June, 1954, F. H. Meenen, in his said capacity, had accumulated in rents and profits a further amount which plaintiff alleged is in excess of $8,000. for which no accounting or distribution has been made. The prayer was for the partition of the real property, and that F. H. Meenen be required to make a true accounting so the plaintiff might have his full share of all rents and

profits according to his interest in the land. All the living children and grandchildren of Johanna Meenen were made party defendants.

Defendants filed a joint answer in which they admitted the allegations of the first cause of action and by reference made it a part of their answer. The answer contained a general denial of all matters alleged in the second cause of action except such matters as were specifically set forth and admitted. The answer further reads:

"That the said defendant, F. H. Meenen, ever since the death of Johanna Meenen, his mother, has been looking after said real estate as agent, has been collecting the rents, issues and profits therefrom, out of which he has been paying the taxes lawfully levied and assessed against said real estate as the same became due, has been keeping the buildings located thereon in reasonable repair and adequately insured against the usual hazards, and otherwise has been handling said real estate and the income therefrom as such agent during said time as any careful and prudent person would be expected to do under the circumstances; and that all of the moneys collected by him as such agent were either deposited in the checking account he kept as such agent in The First National Bank, of Clifton, Kansas, under the name of Johanna Meenen estate, or invested by him in certificates of deposit issued by said bank to said estate as payee therein; and checks in payment of taxes, repairs, insurance and other proper expenses in connection with the management of said real estate were issued by him upon said account from time to time, all as shown by an accounting hereto attached, marked Exhibit 'A' and made a part hereof as fully and completely as if rewritten herein and copied in full.

"That in addition to the money now on hands, as shown by such accounting, the said F. H. Meenen, as such agent, also now has on hands about 931 bushels of wheat and 1300 bushels of corn in storage on the farm; and that he will, whenever required by the court, sell such wheat and corn and account for the net proceeds that may be received therefor.

"That on the 1st day of March, 1928, plaintiff's father, Peter J. Meenen, since deceased, being then justly indebted to his mother, Johanna Meenen, also since deceased, in the sum of $8,750.00, made, executed and delivered to her, the said Johanna Meenen, his certain promissory note in writing of that date, by the terms of which he promised and agreed to pay to the order of the said Johanna Meenen, without interest, said sum of $8,750.00 ninety days after demand.

"That said note was also executed by Zoa Meenen, plaintiff's mother, who was then the wife of the said Peter J. Meenen.

"That as alleged in plaintiff's petition, the said Peter J. Meenen died intestate in the month of May, 1930, leaving as his sole and only issue the plaintiff, his son; that at the time of his death the said Peter J. Meenen was, and had been for several years next prior thereto, a resident of Dodge County, Nebraska, and that so far as these defendants are advised, no administration was ever had upon his estate.

"That up to the 7th day of June, 1954, no demand for the payment of said

note had ever been made, so far as these defendants know, and that prior to said date, no part or portion thereof had ever been paid.

"That upon the death of the said Johanna Meenen, intestate, on the 11th day of July, 1934, owning the lands described in plaintiff's first cause of action set out in said petition, the amount of the indebtedness as represented by said note at once became an equitable lien upon plaintiff's share therein, as his father's successor in interest; and that in view of the fact that no administration was ever had upon her estate and no settlement in full as among her heirs was ever otherwise had with respect thereto, or in regard to the income received therefrom (except partial distributions as shown by said accounting), said lien, these answering defendants aver, is still in full force and effect, and the amount thereof, as reduced by the credit hereinafter mentioned, should be set off against plaintiff's interest in said lands and/or his share in said accumulated net rents or profits.

"That notwithstanding nothing had ever been paid upon said note and the amount thereof constituted an equitable lien upon his interest in said lands, and also upon his distributive share of the accumulated net rents and profits, as defendants contend, plaintiff, on said 7th day of June, 1954, orally requested the said F. H. Meenen, as such agent, to make a distribution to him in cash of the sum of $6,000.00, such sum being, as plaintiff claimed, his share of the accumulated net rents and profits; that said F. H. Meenen then stated to plaintiff in substance that while he had theretofore distributed some money to himself, personally, and to his co-tenants, other than plaintiff, he could not, in justice either to himself, as one of the owners of said lands, or the remaining owners thereof, other than plaintiff, pay him said sum of $6,000.00 in cash, unless he would be willing that the major portion of such proposed distribution be credited upon said note; that after discussing said matter at some length, it was then orally agreed that the sum of $2,000.00 be paid to plaintiff at that time, and the sum of $4,000.00 be credited upon said note; that thereupon the plaintiff and the said F. H. Meenen, as such agent, went to the office of Joe Haynes, of Clifton, Kansas, where said note had been left by the said F. H. Meenen for safe keeping; that after reaching said office, the said plaintiff was given a check drawn on said account for $2,000.00 by the said F. H. Meenen, as such agent, and the said Joe Haynes, at said agent's request, and in the presence of the plaintiff, and with plaintiff's consent, acquiescence and approval, credited on said note said sum of $4,000.00, thus reducing it to the sum of $4,750.00 as unpaid principal.

"That in accepting said sum of $2,000.00, represented by said check and thereafter cashing same and in consenting to the endorsement of said sum of $4,000.00 upon said note, the *plaintiff thereby not only agreed that same would constitute full payment and satisfaction of the partial distribution to him of said sum of $6,000.00, but also in legal contemplation and effect, recognized said indebtedness, as represented by said note, as his own and agreed that the balance thereof might be set off against his distributive share, as his father's successor in interest, not only in said lands, but also in said accumulated net rents and profits.*

*    *    *    *    *    *    *    *    *    *    *    *

"WHEREFORE, the defendants having fully answered plaintiff's said petition,

join in the prayer thereof that partition of said real estate be made according to law; that the amount of the indebtedness represented by the note of $8,750.00 executed by plaintiff's father and mother be set off against his interest in said lands and in the accumulated net rents and profits; and that the accounting attached hereto, marked Exhibit 'A' and made a part hereof be settled and allowed."

Exhibit "A" attached to the answer shows a balance of cash on hand of $10,407.41, and 931 bushels of wheat, and 1,300 bushels of corn.

Plaintiff filed a demurrer to all that portion of the answer of defendants which followed the general denial, upon the grounds (1) the trial court had no jurisdiction to grant the relief asked by defendants; (2) defendants had no legal capacity to maintain said portion of the answer; and (3) said portion of the answer did not state facts sufficient to constitute a defense to plaintiff's second cause of action.

This demurrer was duly presented to the court and argued, and taken under advisement. The court requested counsel to furnish written briefs, which was done. Later, February 2, 1955, the court, having fully considered the arguments and briefs of counsel, found the demurrer should be in all respects overruled, and made an order to that effect. This order is the one that forms the basis for plaintiff's appeal.

Counsel for appellant rely heavily on the statute of nonclaim, and contend that we must assume the law of Nebraska to be the same as that of Kansas. This statement is not quite correct. See, *Poteet v. Simmons*, 172 Kan. 310, 240 P. 2d 147, where the same principle was relied upon. In 1947 our legislature enacted a statute, now found in G. S. 1949, which reads:

"Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." (60-2878.)

"The court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information." (60-2879.)

"The determination of such laws shall be made by the court and not by the jury, and shall be reviewable." (60-2880.)

This was one of the acts recommended by the Commission on Uniform Laws, and may be found in 9 U. L. A., p. 401, where it states:

"The purpose of this act was to simplify the method of properly bringing to the consideration of the court applicable principles of foreign law and to

leave its determination to the court instead of the jury. *Strout v. Burgess,* 1949, 68 A. 2d. 241, 144 Me. 263, 12 A. L. R. 2d 939."

See, also, *Franzen v. Equitable Life, &c., Society,* 130 N. J. L. 457, 33 A. 2d 599.

While not identical with our statute, G. S. 1949, 59-2239, the Revised Statutes of Nebraska, 1943, § 30-609, treats, in part, the same matter, as follows:

"Every person having a claim or demand against the estate of a deceased person who shall not after the giving of notice as required in section 30-601 exhibit his claim or demand to the judge within the time limited by the court for that purpose, shall be forever barred from recovering on such claim or demand, or setting off the same in any action whatever. If any person having such claim or demand shall fail for two years from and after the death of such decedent to apply for or take out letters of administration on the estate of such deceased person, or cause such letters to be taken out as provided for in sections 30-302 to 30-330, then such claim or demand shall likewise be forever barred. This section shall not be construed to limit or affect the time within which a person may enforce any lien against property, real or personal, of such deceased person, nor shall it be construed to affect actions pending against the deceased at the time of his death."

As indicating that the Nebraska court has declined to apply the above statute in equitable actions, see, *Crawford State Bank v. McEwen,* 132 Neb. 399, 272 N. W. 226; *Bratt v. Wishart,* 136 Neb. 899, 287 N. W. 769; and, *Stander v. Pankonin,* 141 Neb. 738, 4 N. W. (2d) 895.

That is substantially what this court has held when construing G. S. 1935, 22-702, cited by appellant as the applicable statute here. We have held the statute is not applicable to actions in the district court, *Robertson v. Tarry,* 85 Kan. 450, 116 Pac. 486; nor stockholder's double liability, *Farmers State Bank v. Callahan,* 123 Kan. 638, 256 Pac. 961; nor when administration has been had in any other state, *Toner v. Conqueror Trust Co.,* 131 Kan. 651, 293 Pac. 745; nor in an action by surviving partner, *Burris v. Burris,* 137 Kan. 831, 22 P. 2d 976; nor in partner estates and accounting action, *Burris v. Burris,* 140 Kan. 208, 34 P. 2d 127. Many other cases might be cited.

Counsel for appellant say the law concerning advancements is not applicable to this case, as the alleged note purports to evidence a debt. The fact that a "note" was given does not, of itself, preclude the idea of it being an advancement. The instrument is peculiar. The payment date named in the instrument is "90 days after demand." There had never been a demand for payment prior to

June, 1954. The interest was at the rate of "no percent." On the back of the instrument were endorsements indicating the items which made up the amount of the note. These indicate that the maker had received $2,000. at one time in 1917, $4,000. another time that same year, $1,500. in 1921, and $2,250. in 1927. These figures total $9,750. He paid $1,000. in 1919, leaving a balance of $8,750.

Passing the right of Johanna Meenen to make a demand for payment, which right was never exercised, the instrument may be construed as nothing more than a statement in writing of the amount Peter J. Meenen had received from his mother and actually intended it be taken into consideration in the final settlement of her estate.

Johanna Meenen was under no obligation to go into the state of Nebraska where there was no administration pending on her son's estate, and initiate such proceedings. Indeed, it would have been futile if she had done so.

This is not a suit upon the "note." It is an action by one of the heirs at law to certain real property, to have it partitioned among co-tenants, and for an accounting for rents and profits, brought under our Code of Civil Procedure, G. S. 1949, 60-2101, *et seq.*, in which the court has authority to make orders to secure a just and equitable partition. In considering any controverted claim between the parties as to their respective rights, if the matter is not covered by statutes, equitable principles apply.

In *Peterson v. Peterson,* 173 Kan. 636, 251 P. 2d 221, it was held:

"In an action to partition real estate under G. S. 1949, 60-2101 to 60-2114, it is held that in administering the provisions of the pertinent sections of the code, the trial court has the same powers as were exercised by chancery courts under equity practice, including full power to settle all questions involved on just and equitable principles." Citing authorities.

While the appellant normally is not chargeable with the debts of his father, since his father's estate was not administered and he is the only child, he unquestionably received what benefit occurred by his father receiving the sums evidenced in this instrument, and unless they have been lost in some way, he still has them.

The statutes of nonclaim have no bearing on the case. The statutes of limitations do not run against a sum due the common ancestor in the settlement of an account between the heirs at law. See, Bartlett's Kansas Probate Law and Practice (Rev. Ed.), Vol. 1, §§ 343, 344, and authorities cited. Apparently the son recognized

this when he authorized the $4,000. to be paid June 7, 1954. In any event, it was a moral obligation and he could assume the liability. Whatever controversy may arise about the facts pleaded, certainly the district court is not without jurisdiction to hear and decide the case.

We have examined all authorities cited by counsel but find no necessity of further extending the opinion. The judgment of the trial court is affirmed.