No. 40,406

ALLAN ROGER MEENEN, *Appellant,* v. LUDOLPH MEENEN, also known as L. E. MEENEN; FRITZ MEENEN, also known as F. H. MEENEN; BERTHA MEENEN GERRIETS, HENRY J. MEENEN, FRIEDRICK MEENEN, HENRIETTA MOREY, *Appellees.*

(308 P. 2d 158)

780

Opinion
filed March 9, 1957.

*C. Vincent Jones,* of Clay Center, argued the cause; *Wayne W. Ryan,* of Clay Center, was with him on the briefs for appellant.

*W. M. Beall,* of Clay Center, argued the cause, and was on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is the second appearance of this action in this court (See *Meenen v. Meenen,* 178 Kan. 510, 289 P. 2d 766). The appeal is from a judgment denying petitioner's claim relative to an accounting in his second cause of action, and from all other adverse rulings.

It goes without saying that the issues now to be reviewed are dependent upon later events and proceedings. Nevertheless, since this cause was determined by the court below on an agreed statement of facts in substantial accord with the facts stated by the answer of the defendants, except as to the legal effect thereof, it is particularly important that readers of this opinion understand the facts, circumstances and conditions governing our decision in the first appeal where it was determined that the statute of nonclaim had no bearing on the case. They are clearly and succinctly set forth in the opinion of that decision where they can be found by reference when required for purposes essential to the disposition of this appeal. For that reason they will not be here detailed or repeated.

The plaintiff, appellant herein, for his first cause of action alleged that the plaintiff was the owner by inheritance from Johanna Meenen of a 3/15 interest in the estate and asked that it be so partitioned. And the defendants, appellees herein, in their answer admitted that the plaintiff did own such interest and by reference adopted the allegations of the first cause of action as a part of their answer. Thereafter, on February 2, 1955, the court found and decreed that the plaintiff was the owner of a 3/15 interest in the land and ordered it partitioned after plaintiff had announced that he was appealing the order overruling the demurrer (*Meenen v.*

*Meenen,* supra). There being no objection the Journal Entry made the following reservation in the finding of the court:

". . . the court finds that, the court should and does hereby reserve and continue for further hearing, at a time to be agreed upon by the parties or fixed by the court, all matters relating to accounting, and distribution, and does order the cause to proceed as to plaintiff's first cause of action, for partition."

It also made the following reservation in the decree:

". . . And that whether partitioned or sold the court reserves the right to make such appropriate orders as may be necessary to conserve the rights of the parties as shall appear upon the accounting herein."

The foregoing decree had long been final before the plaintiff's amended and supplemental reply was filed. The partition following the decree was completed—the land was sold to Ludolph Meenen by election and the money paid into court whereupon a deed was issued to him.

Thereafter, on April 4, 1956, the court tried the case as to the accounting upon the admission of the pleadings, the agreed statements of facts, the admissions of the defendants and the evidence, and after having taken the ruling under advisement made special findings of fact and conclusions of law on May 2, 1956, and rendered judgment against plaintiff and overruled plaintiff's motion for a new trial.

The plaintiff at every stage of the case and at every opportunity, by motion to determine issues of law in advance of trial, by requested findings of fact and law, by motion for additional and substituted findings of fact and law, by request for the court to state the grounds of his decision, and by motion for a new trial, asked that the questions herein presented be determined in favor of the plaintiff; and each and all of the same were uniformly determined against him.

The Findings of Fact and Conclusions of Law necessary for the disposition of this appeal are hereinafter quoted:

"Findings of Fact.

"The Court finds the facts to be as admitted by the pleadings herein and as stated in the Agreed Statement of Facts on file herein and as hereinafter stated.

. . . . . . . . . . . .

"2. That at the meeting in Joe Haynes' office in Clifton, Kansas, on June 7, 1954 when plaintiff, his mother, F. H. Meenen and Joe Haynes were present, and plaintiff accepted the sum of $2,000.00 by way of partial distribution

of his distributive share in Johanna Meenen's estate and consented to the endorsement of the sum of $4,000.00 on the note, Joe Haynes stated that although he was no lawyer he was of the opinion that under the laws of Kansas the note of $8,750.00 given by plaintiff's father to Johanna Meenen was an offset against plaintiff's distributive share in Johanna Meenen's estate and should be deducted therefrom. The Court further finds that even though plaintiff may have accepted and relied upon such opinion and representations of Joe Haynes in this regard, he was not misled or deceived thereby."

"CONCLUSIONS OF LAW.

"1. That the original accounting of F. H. Meenen filed herein, as modified, corrected and supplemented by Paragraph 1 of said Agreed Statement of Facts, is approved and confirmed.

. . . . . . . . . . . .

"3. That the oral agreement set for in Paragraph 8 of the Agreed Statement of Facts is valid and binding in all respects. [Referred to in Finding of Fact No. 2.]

"4. That plaintiff inherits and takes the same interest in Johanna Meenen's estate and in the accumulated rents and profits that his father, Peter J. Meenen, would have taken had he outlived Johanna Meenen, and he takes it subject to the same conditions and equities that Peter J. Meenen would have taken.

"5. That plaintiff is legally and morally bound to suffer the amount due on said note to be deducted from his distributive share in said estate.

"6. That the amount of the indebtedness represented by said note of $8,750.00, less the credit of $4,000.00 thereon, constitutes an equitable lien upon plaintiff's distributive share in said estate."

The appellees asked, by their lawsuit in behalf of the estate, to collect from the plaintiff $8,750.00 owed by the plaintiff's predeceased father to plaintiff's grandmother, $6,000.00 of which money was borrowed before the plaintiff was born, plaintiff being only eight years old when his predeceased father executed the note, and only ten years old when his father died. The essence of appellees' claim, that being the principal issue herein, is an attempt to take from the plaintiff ⅘ of $8,750.00 (the total sum of plaintiff's predeceased father's note less plaintiff's 3/15 interest therein in his grandmother's estate) from plaintiff's inherited share, to pay the debt of plaintiff's predeceased father and living mother. Stated more concisely, the principal question to be determined by this action is whether, when a grandson inherits a 3/15 interest in land from his grandmother, under G. S. 1935, 22-118, his inherited share is subject to an equitable lien for the debt of his predeceased father to the grandmother.

The question on the facts before this court has never been presented since the statutory amendment of 1891. In a case where

an heir himself is indebted to an intestate decedent from whom he inherits, the right of the decedent's estate to have the unpaid debt considered a part of the estate, as being already in the hands of such heir, is sometimes called the right of retainer, sometimes the right of set-off, and sometimes the right of an equitable lien. But what is meant is simply that where the heir himself owes the decedent, and has not paid him, he already has in his hands funds belonging to the estate, and such funds are considered a part of the mass of the estate, and credited against his distributive share.

The appellant concedes the above to be a correct statement of the law where the heir himself owes the intestate. This position of the appellant is fortified by his insistence in the lower court that the sum of $240.00 owed by Ludolph Meenen to Johanna Meenen, the intestate decedent herein, should be deducted from the distributive share of Ludolph Meenen, who is a son of Johanna Meenen.

The principal contention of the appellant is that the manner in which an heir inherits property is significant and is the criterion by which the issue herein should be resolved. He contends that where the heir inherits *direct* from the remote ancestor and *not through* the immediate ancestor by reason of the controlling statute, the debt of the immediate ancestor is not chargeable against the heir who inherits from the remote ancestor.

In the case of *Head v. Spier*, 66 Kan. 386, 71 Pac. 833, we have an example dealing with two sections of the Kansas statutes as they existed prior to 1891. That case is representative of one which dealt with the manner in which collateral heirs inherit. There Truxton Head owed his brother, Nathaniel, and died intestate August 9, 1882, leaving a widow and two sons, Thomas and Simeon. Thereafter, Simeon died intestate February 15, 1898, leaving a widow and five children, among whom were three minors, Harley, Anna and Louis. Nathaniel, from whom the property came, and to whom the debt was owed, died April 27, 1899, intestate, single and without issue, and his parents had preceded him in death. The three minor children of Simeon by their guardian, sought to get their full share of the inheritance without liability for the debt of Truxton to Nathaniel's estate. This court held against them on the basis of the statutes then applicable, which read:

Sec. 2521. "If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife or issue, the whole of his estate shall go to his parents."

Sec. 2522. "If one of his parents be dead, the whole of the estate shall go to the surviving parent; and if both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue." (G. S. 1868, Ch. 33, §§ 20 and 21—which appears the same in G. S. 1901, §§ 2521 and 2522).

The court there said:

"In the light of these provisions the contention of the plaintiffs cannot be sustained. The only right they had to inherit any of the property of Nathaniel is derived through their ancestor, Truxton, descending through their deceased father. It was said in *Smith v. Lynch*, 61 Kan. 609, 613, 60 Pac. 329, 330:

"'. . . For the purpose of the transmission of title through ascending heirs to collateral kindred, the statute of descents and distributions conceives the ancestor as living, and also conceives those who receive the title from him as likewise living. . . . It presupposes the parents of the deceased to be still alive, and also presupposes those next in the line of succession to be likewise living.'

"It is true this is but a fiction of the law, but it is the fiction that gives the plaintiffs all the right they have to inherit from Nathaniel Head. They take through Simeon Head, he through Truxton, and he in turn through the common ancestors of Nathaniel and Truxton Head. The ancestors of Nathaniel and Truxton having taken the entire estate, *Truxton* inherits his share subject to any equitable claim Nathaniel's estate held against him. Simeon inherits through Truxton, subject to any equitable claim the estate held against either Truxton or Simeon. The present plaintiffs can take no more than could have been taken by Truxton or Simeon. They inherit and take exactly the same interest in Nathaniel's estate that Truxton would have taken had he outlived Nathaniel, and they take it subject to the same conditions and equities that Truxton would have taken." (Emphasis added.)

Appellant contends that these sections of the law by their wording necessarily require that the property in a *collateral* heirship case be conceived and visualized as going *to* and *through* Truxton Head, and then *to* and *through* Simeon C. Head, and then to the minor heirs. But appellant maintains that at the time Johanna Meenen died, July 11, 1934, *direct descending issue* of a prior deceased child inherited in an entirely different manner. He points out that prior to the enactment of Chapter 111 of the Laws of 1891, Sections 18 and 19 of Chapter 33, G. S. 1868, were in force and prescribed the manner in which direct descending heirs inherited. Those sections read:

Sec. 18. "Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, descend in equal shares to his children."

Sec. 19. "If any one of his children be dead, *the heirs* of such child shall *inherit* his share, *in accordance with the rules herein prescribed, in the same manner as though such child had outlived his parent.*" (Emphasis added.)

Justice Valentine in the year 1880, considering those sections in the case of *Fletcher v. Wormington,* 24 Kan. 259, emphasized that direct descending heirs of a predeceased child "inherit his share in accordance with the rules herein prescribed in the same manner as though such child had outlived his parent". The argument then follows that under old Section 19, the heir of a predeceased child had to take by and through his prior deceased parent, "in the same manner as though such child had outlived his parent". Hence, if the prior deceased parent owed an intestate from whom the property came, the property would have been considered as passing *to* and *through* the prior deceased child; and as soon as it was considered as reaching the prior deceased child, an equitable lien immediately fastened upon it. And when the property passed to and through the prior deceased child it necessarily passed to the heir with the lien upon it. On March 12, 1891, the legislature by Chapter 111, Laws of 1891, repealed old Sections 18 and 19, making the law concerning descent of prior deceased children by intestate succession read as in G. S. 1935, 22-118:

"Subject to the rights and charges hereinbefore contemplated, the remaining estate of which the decedent died seized shall, in the absence of other arrangements by will, *descend* in equal shares to his children surviving him, and *the living issue,* if any, of prior deceased children; but such issue shall collectively inherit only that share to which their parent would have been entitled had he been living." (Emphasis added.)

Appellant's position is that from the amended law an intestate's property is made to descend from the intestate. It is made to "descend *to his children surviving him and the living issue. . . .*" of prior deceased children. Further, that this is a substitution of the living issue as a *direct* heir of the intestate, in place of the prior deceased child. It indicates a direct taking of the descent.

Appellant argues that if the legislature had intended the amended law to mean the same *as to the manner of descending* as old Section 19 prescribed, there was no reason for changing the old form of expressing it. A change in phraseology or the deleting of a phrase of the original act, raises a presumption that a change in meaning was also intended, citing *Leslie v. Reynolds,* 179 Kan. 422, 295 P. 2d 1076; *State, ex rel. v. Richardson,* 174 Kan. 382, 256 P. 2d 135. Appellant argues that it was the clear design and result of Chapter

111, Laws of 1891, G. S. 1935, 22-118, to make the issue of a prior deceased child take directly in their own right from the intestate from whom the property comes, and not to be liable for the debts of their prior deceased ancestor.

The laws in the various states of this country are not all in accord on this point of law. It is said at 9 R. C. L. p. 111, Sec. 110, in part:

"The authorities are not in accord as to whether the share of a child of a deceased child who takes the share in his grandfather's estate which his parent would have taken if living is subject to deduction for his parent's debt to the grandfather. The weight of judicial opinion seems to be against the right of deduction in such a case, the theory being that an heir of the heir takes directly from the more remote ancestor and in his own right, and not through and in right of his immediate ancestor, . . . The minority view, however, is represented by respectable authority. It is based on the ground that the share in the estate of the remote ancestor is taken strictly by representation, wherefore only that passes on the second descent which came down on the first, the inheritance being from the immediate and not the remote ancestor."

Appellant argues further that the legislative intent on this point is found in the law concerning advancements at that time. In 1891 the statute of Kansas concerning advancements was as it appears in G. S. 1935, 22-125 and 22-126, and the first of these sections reads:

"Property given by an intestate, by way of advancement to *an heir*, shall be considered part of the estate, so far as regards the division and distribution thereof, and shall be taken by *such heir* toward his part of the estate at what it would now be worth if in the condition in which it was so given *him*." (Emphasis added.)

And the next section provided that if he had received an excess, he did not have to return the excess. This section, the appellant emphasizes, had no application to anyone except an heir of the intestate. A prior deceased son of an intestate was not his heir.

Whether the inheritance of Allan Roger Meenen, the appellant herein, was subject to an equitable lien for the debt of his predeceased father to his grandmother must be determined from the law as it existed on the 11th day of July, 1934, immediately after the death of the grandmother, Johanna Meenen.

It was not until July 1, 1939, that the legislature enacted Chapter 180, Laws of 1939, which is G. S. 1949, 59-510. It reads as follows:

"Property which has been given by an intestate decedent by way of an advancement to one to whom the decedent's property, or a part of it, would pass by intestate succession, shall be counted as a part of the distributive share of such property to such person, and to that extent shall be taken into

account in determining the estate to be distributed among those to whom it passes by intestate succession, but if such advancement exceeds the amount to which such person would be entitled by the laws of intestate succession he shall not be required to refund any portion of the advancement. *If such person receiving an advancement dies before the decedent, leaving heirs who take from the decedent, the advancement shall be allowed in like manner as if it had been made directly to them."* (Emphasis added.)

There is another reason assigned by the appellant as to why the legislature should have in 1891 made a difference in the manner in which collateral heirs and direct descending heirs inherit from the intestate from whom the property comes. He argues that what a collateral heir inherits is in the nature of a pure windfall. It is out of the ordinary expected course. It is something, which comes to the collateral heir that he had little reason to expect. From the fact, that ordinarily an intestate would have some direct heirs, such as a wife or children, or parents, a collateral heir has seldom, if ever, helped earn or contributed anything toward earning the property, which he inherits from the intestate from whom the property comes.

On the other hand, appellant urges it is within the common knowledge of men, that a child or grandchild commonly expects to inherit something from his parents, and grandparents. The child has commonly contributed something toward what his parents have saved, and the predeceased parent of a grandchild has commonly and usually helped earn or contributed something toward what the intestate grandparent has saved. Hence, he argues it is quite natural as well as altogether reasonable for the legislature to make collateral heirs inherit by and through their predeceased ancestors and thereby require them to take their aliquot share with a lien upon it for the debts to the intestate from whom the property comes, of all persons through whom the collateral heir inherits. And likewise natural, and altogether reasonable, to make the issue of a predeceased child of the intestate from whom the property comes inherit directly from the grandparent instead of by and through a predeceased parent.

Distinguished counsel have served this court well in the presentation of their client's cause on this subject. The artfully moulded web of technical niceties in the law as spun by counsel for the appellant merit the consideration heretofore given appellant's position. For the reasons hereinafter assigned we cannot, however, agree with the result toward which appellant strives.

The case of *Head v. Spier*, supra, is commonly cited by note writers for the rule of law that the inherited interest of an heir in the estate of a remote ancestor is subject to an equitable lien for the debt of his immediate ancestor to the remote ancestor. Appellees rely on this case. But significantly, counsel for appellant point out that this case was based upon a statute then in force and upon facts of *collateral* heirship. For the same reason we look exclusively to our own statutes and decisions for an answer herein, and not to the decisions from other jurisdictions which vary with the many statutes and circumstances therein presented.

The history of our law with its foundation in the common law takes us back centuries to assist in the interpretation of our statutes. Section 19, Chapter 33, G. S. 1868 uses the word "heirs" and also the word "inherit". The significance of the word "heir" is found in the old common law of England where it was definitely a word of art. It had a special and peculiar meaning as well as a special place where it could be used. Without laboring the point too much, an "heir" is one upon whom the law casts an estate of inheritance immediately upon the death of the owner, and the rights of heirs are considered as arising at the moment of the death of the ancestor. No person is heir of a living person. A person occupying a relation which may be that of heirship is, however, called heir apparent or heir presumptive. (2 Bla. Com. 208). In the word "heirs" is comprehended heirs of heirs *in infinitum*. (Co. Lit. 7b, 9a). The word "heirs", as applied to persons who are to take in remainder, being a technical word having a definite legal signification, when unexplained and uncontrolled by the context, must be interpreted according to its technical import, as designating the person appointed by law to succeed to the realty in case of intestacy (*Howell v. Garton*, 82 Kan. 495, 108 Pac. 844).

The word "inherit" is complementary of the word "heir". It means to take as heir, on the death of the ancestor.

Under Kansas law that person is an heir whom the statute of descents and distributions declares to be an heir when explained and controlled by the context of the statute. Under Section 19, Chapter 33, G. S. 1868 the "heirs" of a deceased child "shall inherit his share" (the deceased child's share) from the remote ancestor. It is readily apparent that the term "heirs" was used out of normal context and without more in the statute would give rise to an ambiguous meaning. It was no doubt the intention

of the legislature to clarify *who* should take the estate by adding the clause: "in the same manner as though such child had out-lived his parent." This modifying clause explained how the term "heirs" should be applied in the statute and thereby clarified *who* was to take.

Appellant relies on this clause to emphasize that the share inherited by a child comes *through* the immediate ancestor under this statute and then attempts to distinguish the statutory change made in 1891. In view of the foregoing his position becomes somewhat tenuous.

By the amendment of 1891 it will be observed that Sections 18 and 19, Chapter 33, G. S. 1868, were combined into one section. The most significant change was the substitution of the word *"issue"* for the word *"heirs"* in Section 19. After the change the *"living issue, if any"* instead of the "heirs" of a prior deceased child of a deceased intestate collectively took the share to which their parent would have been *"entitled had he been living"*.

The legislature by substituting the word "issue" for the word "heirs", which was completely deleted from the statute and which had a definite meaning as a word of art, was confronted with a complete rewording of the statute to effectuate the intended change. (See: *Leslie v. Reynolds,* supra, and *State, ex rel. v. Richardson,* supra). What was the intended change that the legislature sought?

In 1889 the case of *Delashmutt v. Parrent,* 40 Kan. 641, 20 Pac. 504, was decided. In that case, Delashmutt and his wife had a family of six children, three of whom died early, unmarried and without issue. Thereafter, the mother died intestate owning the land in controversy. She left surviving her, her husband, the father of the children, and three children. In an action to determine the interests of the father and the three children in the land, this court held that the surviving father was the sole heir of the three deceased children and the shares they would have taken had they survived their mother descended to him. In other words, the father inherited 9/12 and each of the three living children 1/12.

This court, in *Riley v. Day,* 88 Kan. 503, 129 Pac. 524, decided in 1913, in an opinion written by Chief Justice Johnston, who had written the opinion in the Delashmutt case, tells us plainly why the 1891 amendment was made:

". . . There are good reasons to infer that the amendment was enacted to cut out the right of the husband or wife of the intestate and of the deceased child to inherit a share of the estate of the ancestors of such child.

After *Delashmutt v. Parrent,* 40 Kan. 641, 20 Pac. 504, was decided there was some surprise at the interpretation there given to the word 'heirs' under which the surviving husband or wife of an intestate could take the share that a prior deceased child would have taken if he had outlived his parent. An agitation was at once started for the enactment of a measure that would give the remaining estate of an intestate to the surviving children, and to the living children of a prior deceased child, so as to cut out the right of the surviving husband or wife of the intestate to inherit the share of a deceased child, and also to exclude the husband or wife of such deceased child from inheriting any part of that share. At the succeeding legislature the amendment was made to meet this demand and which, as we have seen, gives the remaining estate of an intestate to his surviving children and the living children of a prior deceased child, instead of to the heirs of such child. This, we think, was the purpose of the amendment, rather than to nullify the principal provisions of the adoption act or to discriminate among the children of a deceased child of an intestate."

The question there involved was whether under Section 2952 of the General Statutes of 1909 (same as G. S. 1935, 22-118) an adopted child of a prior deceased daughter of an intestate could inherit. On this point the court in paragraph three of the syllabus held:

"The words 'living issue' as used in the amendment were employed by the legislature in the sense of living children, and hence an adopted child of a prior deceased daughter of an intestate does inherit a portion of the estate of such intestate *through* her adopting mother." (Emphasis added.),

Note that this court as then constituted in the syllabus by the court said the adopted child inherited its share *through* the adopting mother and not *directly* and *immediately* from the adopting mother's parent under the same identical statute in which appellant contends the descent to be *directly* from the remote ancestor herein.

In reality, we are of the opinion that it does not make much difference whether appellant inherited an interest through his father or directly and immediately from his grandmother. In either event, equity should require that the debt be taken out of his share. To hold otherwise would place him in a better position than his father would have been had he survived his mother, and that should not be the law. Appellant stepped into his father's shoes and should not be permitted to get a greater share than his father would have taken. He was substituted for his father in all respects. Under the statute he got the share to which his father "would have been *entitled* had he been living." In the case of *Head v. Spier,* supra, this court in discussing the statute as it existed under Section 19, Chapter 33, G. S. 1868, recognized that

where an ancestor was conceived as living for the purpose of transmitting title through the ancestor, this process of reasoning was nothing but a fiction of the law, and it was the fiction that gave the claimants therein all of the right they had to inherit from the remote ancestor. Similarly, by the statute as amended in 1891 it is a fiction of law which entitles the appellant to inherit from his grandmother. This is apparent from the words: "would have been *entitled* had he been living." It is perfectly clear, but for the fact that Peter J. Meenen, appellant's father, was a son of Johanna Meenen, appellant would not be here litigating these matters.

The appellant, being the only child of Peter J. Meenen, no doubt has had the benefit of the money loaned to his father in one way or another. On the previous appeal before this court (*Meenen v. Meenen,* supra) this court observed:

"While the appellant normally is not chargeable with the debts of his father, since his father's estate was not administered and he is the only child, he unquestionably received what benefit occurred by his father receiving the sums evidenced in this instrument, and unless they have been lost in some way, he still has them." (p. 516.)

Appellant's argument, therefore, that the rule should be different with respect to collateral heirs, since what they inherit is purely a windfall, loses its force when we see that if applied to the appellant in this case, he may actually be receiving the benefit of that portion evidenced by the debt of his father twice were we to adopt his position. Both arguments overindulge in theory and speculation.

The change in our statutes concerning advancements does not support the argument presented by the appellant. The statute concerning advancement as it existed prior to 1939, as heretofore fully set out, covered only advancements to an heir of the intestate. No mention whatever was made of the situation presented by this case. It is clear that the enactment of 1939 intended to cover the situation here presented by its specific wording as italicized in the section heretofore quoted. The legislature, however, encounters no obstacle if it desires to enact into law by statute that which is already the law of this state by judicial determination. A new statutory enactment does not signify an intention on the part of the legislature to change an existing non-statutory law.

Appellant admits that if his father had survived his mother,

the equitable lien would have immediately arisen. Now, just because his father happened to die before his grandmother, he claims he should get his father's interest in the estate without accounting to the others for his indebtedness. Under the statute he took just what his father would have been entitled to receive had he been living. To what the appellant's father would have been *"entitled"* is clear. He would have gotten, had he survived his mother, ⅗₅ of the assets in the estate less the indebtedness. Under the statute properly construed, as we view it, it is conceived that Peter J. Meenen survived his mother and then died owning his share, just as would have been the case under the enactment prior to the 1891 amendment. The statute does not mean merely the fractional part to be taken, but rather the ultimate share to be taken, that is the share to which his father would have been *entitled.* The fractional part that he took was an undivided ⅗₅ interest. The ultimate share is that interest less the indebtedness.

We need not consider the contention of the appellant, that the oral agreement was induced by misrepresentation concerning the Kansas law and thereby voidable for fraud, for the reason that appellant was correctly advised as to the law of Kansas. He was not deceived.

On the previous appeal in *Meenen v. Meenen,* supra, it was said:

"The statutes of nonclaim have no bearing on the case. The statutes of limitations do not run against a sum due the common ancestor in the settlement of an account between the heirs at law. See, Bartlett's Kansas Probate Law and Practice (Rev. Ed.), Vol. 1, §§ 343, 344, and authorities cited. Apparently the son recognized this when he authorized the $4,000 to be paid June 7, 1954. In any event, it was a moral obligation and he could assume the liability. . . ."

Are defendants (appellees) barred by their answer wherein they admitted that the plaintiff (appellant) inherited a ⅗₅ interest in the land, and a decree to that effect was entered and became final, from claiming that the amount of the note should be taken from the plaintiff's distributive share and by *res adjudicata?* We are of the opinion that appellant's contention that they are is without merit. The Journal Entry incorporating the foregoing decree expressly reserved matters relating to the accounting and distribution of the funds paid into court on the partition, and of other funds to be accounted for and distributed in the second cause of action, so as *"to conserve the rights of the parties."*

There was no quarrel between the parties concerning the fact that appellant inherited a $\frac{9}{15}$ fractional interest from his grandmother. The difficulty arose over the accounting and distribution of funds. The controversy highly summarized is that in accounting for the assets of the estate of Johanna Meenen the representative of the estate sought to incorporate $8,750.00 as part of the mass of the estate. Also, in making distribution it was sought to credit such sum against the distributive share of the appellant. This was all disclosed by the second cause of action and gave rise to the principal question of law presented herein.

The right of retainer is an equitable right and gives rise to an equitable lien against the fractional interest of the appellant in the estate of Johanna Meenen.

The judgment of the lower court is affirmed.