Marshall LONG and Betty C. Long, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 79–1585.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 12, 1980.

Decided Sept. 17, 1981.

Daniel C. Weary, Kansas City, Mo. (Dennis P. Wilbert, Kansas City, Mo., with him on the brief), of Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for petitioners-appellants.

Robert A. Bernstein, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, and Joan I. Oppenheimer, Attys., Tax Div., Dept. of Justice, Washington, D.C., on the brief), for respondent-appellee.

Before McWILLIAMS, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Marshall Long and his wife Betty C. Long appeal from the judgment of the United States Tax Court sustaining the Commissioner's determination of income tax deficiencies on their 1971 and 1972 joint income tax returns. Marshall Long (taxpayer), a beneficiary of the estate of his father John C. Long, claimed deductions for his share of the estate's alleged unused long-term capital losses incurred during administration of the estate and carried over to him under Internal Revenue Code (IRC) § 642(h). The only issues on appeal are whether John C. Long's estate, which succeeded to the decedent's interest in the Long Construction Company partnership (Long Construction), incurred a long-term capital loss arising out of liquidation of that partnership and, if so, the amount of that loss.

The parties have stipulated to most of the essential facts. John C. Long (John) died testate on July 5, 1963, owning a 25% partnership interest in Long Construction; his son, taxpayer's brother, Robert W. Long (Robert) owned the remaining 75% partnership interest. John's last will and testament provided that his wife Bertha Long, Robert and taxpayer each would receive one-third of his estate. The partnership was obviously insolvent at John's death; it owed large sums to banks, and two lawsuits were pending against the estate claiming millions of dollars in damages. During the administration of the estate all claims against the partnership were settled. Since Robert apparently had no assets which could be reached to satisfy partnership debts other than his interest as beneficiary of John's estate, the estate paid all partnership debts even though the estate held a 25% interest. The estate then increased its basis in its partnership interest by the full amount of partnership obligations it paid. The partnership was ultimately liquidated, and the estate received $46,417.77 cash as the final distribution from the partnership. Since the estate's basis in the partnership

interest, adjusted by its payment of all partnership obligations, exceeded the amount it received upon liquidation, the estate reported a long-term capital loss. When the estate was unable to utilize all of the loss on its income tax returns, the beneficiaries claimed a right to carry the loss forward to their personal returns. *See* IRC § 642(h).

In its final order of distribution closing the estate, the Probate Court of Jackson County, Missouri, found that Robert owed the estate $638,213.49, which included $633,-561.62 arising out of the settlement of the partnership accounts. Applying the doctrine of equitable retention, Mo.Rev.Stat. § 473.630 (1978),[1] the probate court offset Robert's distributive share of the estate against his indebtedness to the estate. After the offset nothing was left for Robert; the probate court accordingly ordered the administrator to distribute the entire residue of the estate equally between taxpayer and Bertha Long, the other residuary legatees. As a 50% beneficiary of the estate, taxpayer claimed one-half of the unused long-term capital loss on his income tax returns under IRC § 642(h). The Commissioner disallowed the deduction, concluding that the estate had not incurred a long-term capital loss. The Tax Court sustained the Commissioner's determination and found that although estate funds had paid 100% of the partnership liabilities, part of that payment came from Robert's distributive share. *Marshall Long,* 71 T.C. 1 (1978), *op. on motion for reconsideration,* 71 T.C. 724 (1979). It treated Robert as having paid his share of the partnership liabilities when the probate court ordered the offset of his distributive share against his indebtedness to the estate. The Court reasoned as follows:

"After paying the partnership liabilities, the estate sought and obtained a determination from the probate court that Rob-

ert Long, the other general partner and a beneficiary of the estate, was responsible for his 75-percent share of those liabilities. Robert's distributive share of estate assets was then used to offset his liability for the partnership debts and other claims previously paid by the estate. Thus, although the estate advanced the cash to pay those liabilities, it did not actually carry their full burden. *The record is unclear on the extent to which the estate was able to obtain from Robert, through his share of the estate assets or otherwise, his contribution towards the partnership liabilities.* In this regard, the burden of proof is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure. *As the record now stands, we must conclude that the estate did receive Robert's full contribution.* There is nothing in the record indicating otherwise, and petitioner does not argue otherwise."

71 T.C. at 10 (emphasis added). Thus, the Court ruled that the estate could increase its basis in the partnership only by its 25% share of assumed partnership liabilities; the net effect of partnership liquidation, then, was that the estate realized a capital gain rather than a long-term capital loss.

We agree in all respects with the Tax Court's analysis, except for its holding that the record does not provide enough information to determine the amount Robert contributed toward payment of the partnership debt.

The death of John did not terminate the partnership, *see* IRC § 708(b)(1)(B); it continued with the estate as successor to John until the partnership was liquidated November 13, 1969. In calculating the estate's basis in the partnership interest, we must start by determining under IRC § 1014 the fair value of that interest, here agreed to be zero or no value. *See id.* § 742. This basis is then increased by the "estate's . . . share

1. Section 473.630 provides:

"When a distributee of an estate is indebted to the estate, the amount of the indebtedness if due, or the present worth of the indebtedness, if not due, may be treated as an offset by the executor or administrator against any testate or intestate property, real or personal, of the estate to which such distributee is entitled. An offset hereunder shall be treated as if made as of the time of the death of the decedent and interest shall be adjusted accordingly."

of partnership liabilities, if any, on that date." Treas. Reg. § 1.742–1. The Tax Court allowed an immediate basis adjustment for the estate's 25% share of the bank loans owed at John's death. It held that because the lawsuit claims against the partnership were indefinite and contingent liabilities, they should not be recognized for basis adjustment purposes until the exact amounts of the liabilities were established. After the parties settled those suits, the Tax Court treated the settlement totals plus attorneys' fees incurred as partnership liabilities and permitted adjustment of the estate's basis in the partnership interest to the extent of its 25% interest. *See* 1 W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners ¶ 7.01[2] (1977). We agree with this approach and holding. The estate's basis is then further adjusted by the estate's distributive share of partnership income and losses incurred in the years the partnership operated prior to liquidation. IRC § 705(a). Further, when the estate assumed and paid Robert's 75% share of the partnership debt, the estate's basis was increased by that additional sum, to the extent the estate was unable to obtain contribution from Robert. *See* IRC § 752(a). The difference between the basis thus calculated and the cash received in the distribution at the time of final liquidation determines the recognized capital gain or loss. IRC § 731(a).

The record in the instant case shows that after paying the partnership liabilities, the estate sought and obtained the probate court's determination that Robert was responsible for 75% of these liabilities. Therefore, the probate court offset Robert's share of the estate assets against his 75% share of partnership liabilities and other debts he owed the estate.

The Missouri courts have held that a distributee's debt to the estate "is an asset of the estate in the hands of the administrator, who is charged with the duty of collecting it." *State v. Ennis*, 222 Mo. App. 713, 716, 7 S.W.2d 737, 739 (1928). *See Thompson v. McCune*, 333 Mo. 758, 63 S.W.2d 41 (1933). Furthermore, "[a] dis-tributee who is indebted to the estate is not entitled to receive his distributive share without first deducting therefrom his indebtedness to the estate." *Ennis*, 222 Mo. App. at 716, 7 S.W.2d at 739. *Accord, Gorg v. Rutherford*, 31 S.W.2d 585, 588 (Mo.App. 1930). Citing *Thompson v. McCune*, taxpayer contends the Tax Court misconstrued the Missouri doctrine of equitable retention and the effect of the offset decreed by the probate court. He argues that Robert's indebtedness to the estate was not offset against any of the "good" assets; rather, it was offset only against that portion of the estate's total assets consisting of Robert's debt to the estate. Since his indebtedness to the estate was a worthless asset, Robert gave up nothing in the equitable accounting, and having given up nothing, he contributed nothing. Taxpayer argues that notwithstanding the equitable accounting, the estate neither received nor retained any additional sums that could be considered Robert's contribution; the offset could constitute a contribution by Robert only if Robert's indebtedness were less than his distributive share, in which case he would have been entitled to some of the estate's assets other than his own indebtedness.

We do not think Missouri case law supports taxpayer's interpretation of the doctrine of equitable retention. *Thompson*, 63 S.W.2d at 44–45, states that

> "[i]f the legatee or distributee is insolvent or for any good reason the executor or administrator cannot or should not collect the excess, if there be any, of the amount due the estate over the legacy or distributive share of such debtor, there is no need of such executor or administrator taking any independent action to collect, but may without more elect to pay or cancel the legacy by applying thereto the indebtedness of the legatee or distributee to the estate."

This equitable accounting or set-off assumes that when a beneficiary owes money to the estate and has not paid it, "he already has in his hands funds belonging to the estate, and such funds are considered a part of the mass of the estate, and credited

against his distributive share." *Meenen v. Meenen*, 180 Kan. 779, 783, 308 P.2d 158, 161 (1957).

■ The estate, having satisfied an obligation for which the estate and Robert were jointly liable, had a right to recover from Robert his share of the liabilities. *See Missouri Dist. Tel. Co. v. Southwestern Bell Tel. Co.*, 338 Mo. 692, 93 S.W.2d 19 (1935). Although Robert may have been judgment proof so far as his ability to pay anything other than his share of the estate, he was a one-third beneficiary of John's solvent estate, and his share was subject through set-off to the payment of his debts to the estate. His inability to pay the full amount of his debt does not justify holding either that his debt to the estate was valueless and therefore excludable from estate assets, or that he gave up nothing in set-off.

An example illustrates this proposition easily. Suppose the estate's net assets, after paying all claims and charges, consisted of $400,000 cash plus a $200,000 debt owed it by Robert. The distribution in such a case would be $200,000 to Bertha Long, $200,000 to taxpayer, and to Robert only cancellation of his debt. In *Mast v. Mast*, 176 Mo.App. 1, 162 S.W. 328, 329 (1914), the court stated that a distributee's debt due the estate

"is to be treated as so much of his interest in the estate already received by him, and therefore, in the distribution of the property, whether real or personal, he is entitled only to so much thereof as plus what he has already received, will make his share equal to the share of the other heirs or distributees. Otherwise the heir would receive as much more than the other heirs received as the debt he owed the estate amounted to."

The result should not differ significantly if Robert's debt in the example were $200,001 or any larger amount, and he could not contribute anything more than surrendering his one-third share of the estate.

■ By applying a simple mathematical formula, we can calculate the actual value of Robert's debt to the estate. We differ here from the Tax Court because we find that the record contains enough information to determine the debt's value. Under the facts of the instant case, the value of Robert's collectable debt equals 50% of the cash and other assets available for distribution to beneficiaries. We calculate this value as follows: A (assets available for distribution to beneficiaries, other than Robert's debt) + X (collectable amount of Robert's debt) = NE (net estate). Since Robert is beneficiary of one-third of the estate, $X = \frac{1}{3}$ NE. Therefore, $A = \frac{2}{3}$ of NE, and $X = \frac{1}{2}$ of A. The record shows the total assets (other than Robert's debt) available for distribution consisted of $133,699.21 in cash and other personal property valued at $351,074.42. (Exs. 32–AF, 33–AG). Thus we can compute the net value of the estate including the collectable amount of Robert's indebtedness as follows:

| $484,773.63 | Cash and personal property [2] |
|---|---|
| 242,386.81 | Collectable debt from Robert (50% of cash and personal property; ⅓ of total net estate) |
| $727,160.44 | Net value of estate |

Under Mo.Rev.Stat. § 473.630 Robert is treated as having already received $242,386.81 in cash. Since Robert was entitled only to so much of the estate, "as plus what *he has already received*, will make his share equal to the share of the other heirs," *Mast v. Mast*, 162 S.W. at 329 (emphasis added), the administrator properly excluded him in the distribution of distributable estate assets.

Since Robert owed other debts to the estate, we must determine what part of the $242,386.81 represents his contribution toward partnership liabilities and what part represents payment of those other debts. There is some discrepancy between the contentions of the taxpayer and the record.[3] The inventory and appraisement (Ex. 6–F)

**2.** We note minor discrepancies in the figures appearing in Ex. 33–AG. Nevertheless, these numbers are sufficiently accurate to illustrate the proper valuation of estate assets.

**3.** *See* notes 4 and 5 *infra*.

and the federal estate tax return (Ex. 8–H) list a balance due the estate from Robert on a $115,000 promissory note secured by a second mortgage on land in Colorado and a $4500 promissory note secured by a fourth mortgage apparently on the same land. The final settlement order (Ex. 33–AG) declares Robert's total debt to the estate to be $638,213.49, of which $633,561.62 is a settlement of the partnership accounts and $4,651.87 attributable to principal and interest on the $4500 promissory note. From this we may surmise that levy on the Colorado land paid the balance on the $115,000 note but was insufficient to pay anything on the $4500 note. Since both the debt to the partnership and the $4651.87 attributable to the note appear to have the same priority status as unsecured claims, they would share proportionately in the set-off total. Thus $633,561.62/$638,213.49 × $242,386.81 = $240,620.07. That is the total of Robert's deemed contribution to the partnership debt.[4]

Taxpayer makes a final argument that even if the estate is deemed to have made a recovery against Robert, it occurred on December 18, 1969, after the liquidation distribution of partnership assets on November 13, 1969, and should not require retroactive reduction in the estate's basis in the partnership interest. We agree with the Tax Court's analysis in its supplemental opinion, 71 T.C. 724, 726 (1979), that the timing of the probate court order should not control. The estate had complete dominion and control at all times over both the partnership and Robert's share of the estate. It should not be able to control tax consequences by its timing of the liquidation distribution and the request for an order granting the set-off. Further, even if we were to regard the set-off as a separate transaction, since the recovery against Robert and the liquidation of the partnership both occurred in the same tax year of the estate (its tax year ended May 31), the effects of the two transactions would have to be netted and the tax result would be the same.

Therefore, we hold that subject to possible corrections for minor errors in the figures, the estate had a long-term capital loss calculated as follows:

| | |
|---|---|
| Estate's partnership basis at date of death | 0 |
| + 25% share of $309,315.68 bank loans payable at death[5] | $77,328.92 |
| + 25% share of $327,957.03 litigation settlement costs | 81,989.26 |
| – Net adjustment for estate's share of income and losses from partnership tax returns, 1964–1969 (Losses of $122,825.82 less gains of $7,624.73) | (115,201.09) |
| + Assumption by the estate of liabilities owed by Robert (before adjustment for recovery from Robert's share of the estate) | 477,954.53 |
| = Total basis before adjustment for Robert's contribution, if any[6] | $522,071.62 |

4. Taxpayer's Reply Brief p.4 subtracts $479,-481.90—the taxpayer's calculation of Robert's 75% share of the partnership liabilities—from $638,213.49—Robert's total indebtedness to the estate—to get $158,731.59 as Robert's indebtedness to the estate unrelated to the partnership. If we accept such a calculation, it would produce a figure more favorable to the taxpayer. But the statement in the probate court's order that $633,561.62 is "a result of the settlement of partnership accounts" is never explained; the estate, not the government, obtained that order. The burden of proof of entitlement is upon the taxpayer. Tax Ct. R. 142(a). We hold he must abide by that figure as the partnership-related indebtedness unless on remand he can show from the existing record it is a mathematical or other obvious error.

5. For purposes of this calculation, as well as for the settlement costs and Robert's share of liabilities, we use figures from the government's computation for entry of decision at Rec. I, 117, derived from the Tax Court's opinion, 71 T.C. at 11. We note these totals add up slightly differently ($637,272.71) than the total ($639,309.21) that taxpayer claims and that apparently was agreed to by both parties in the stipulation of facts. See Rec. I, 42–52. This discrepancy may relate to the amount of interest due on the First National Bank loan, see Rec. I, 7 and 48, and should be adjusted on remand if necessary to determine any deficiency taxpayer owes.

6. Following Treas. Reg. § 1.752–1 precisely we should perhaps go through an additional two-

| | | |
|---|---|---|
| — Total sum obtainable from Robert toward payment of partnership debt | | 240,620.07 |
| = Adjusted basis | | $281,451.55 |
| — Less liquidating distribution | | 46,417.77 |
| = Long term capital loss | | $235,033.78 |

The case is remanded to the Tax Court for further proceedings consistent herewith.

step process: 1) increase the estate's basis by $159,318.17 for its 25% share of the capital contribution made toward payment of the partnership debt and 2) then decrease the basis by the same amount for the reduction in the estate's share of liabilities after their payment. *See* Rec. I, 117. We would follow the same process to figure the estate's payment of Robert's share of the partnership liabilities.

The government's argument—that the increased basis resulting from the estate's assumption of Robert's liabilities is offset exactly by the reduction in partnership liabilities from the payment, *see* Appellee's Brief pp. 16–17—is fallacious because it leaves out one step. The basis is increased by assumption of Robert's liabilities, increased again by the capital contribution to make the payment, and then decreased by the payment of the debt.