T.C. Memo. 1997-422


UNITED STATES TAX COURT


BEVERLY GORDON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RONALD GORDON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket Nos. 9887-95, 9900-95.     Filed September 22, 1997.


Vincent R. Barrella, for petitioner in docket No. 9887-95.

Ronald Gordon, pro se in docket No. 9900-95.

Rajiv Madan and Anthony J. Kim, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

CHIECHI, Judge:  This case is before us on the motion filed

_____

*  This Opinion supplements our previously filed Memorandum
Findings of Fact and Opinion in Gordon v. Commissioner, T.C.
Memo. 1997-193, filed Apr. 24, 1997.

by Ronald Gordon (Mr. Gordon) and the motion filed by Beverly Gordon (Ms. Gordon) for reconsideration[1] of certain findings in our Opinion in Gordon v. Commissioner, T.C. Memo. 1997-193 (Opinion).[2]  We incorporate our Opinion herein by this reference.

The granting of a motion for reconsideration rests within the discretion of the Court.  Estate of Quirk v. Commissioner, 928 F.2d 751, 759 (6th Cir. 1991), affg. in part and remanding in part T.C. Memo. 1988-286; Klarkowski v. Commissioner, 385 F.2d 398, 401 (7th Cir. 1967), affg. T.C. Memo. 1965-328.  A motion for reconsideration will be denied unless unusual circumstances or substantial error is shown.  Estate of Quirk v. Commissioner, supra at 759.  It is the policy of this Court to try all issues raised in a case in one proceeding to avoid piecemeal and protracted litigation.  Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43, 45 n.1 (1st Cir. 1975). A motion for reconsideration generally will not be granted to resolve issues that are raised for the first time in such a

---

[1]  Ms. Gordon's motion for reconsideration was accompanied by a memorandum in support thereof.  We shall refer collectively to that motion and that memorandum as either Ms. Gordon's motion for reconsideration or Ms. Gordon's motion.  We shall refer to Mr. Gordon's motion for reconsideration as either Mr. Gordon's motion for reconsideration or Mr. Gordon's motion.

[2]  Respondent filed a separate notice of objection to each of those motions and a memorandum in support of the notice of objection to Ms. Gordon's motion.  The Court permitted Ms. Gordon to file a response to Mr. Gordon's motion and permitted Mr. Gordon to file a response to Ms. Gordon's motion.  However, neither Ms. Gordon nor Mr. Gordon filed such a response.

motion, Stoody v. Commissioner, 67 T.C. 643, 644 (1977), or to hear arguments that could have been made before the filing of an opinion, Estate of Trenchard v. Commissioner, T.C. Memo. 1995-232. Moreover, as we observed in Koufman v. Commissioner, 69 T.C. 473, 476-477 (1977):

> This Court has an extraordinarily heavy volume of cases, and in many of them, the Court decides an issue against one of the parties because of his failure to carry his burden of proof or to perform some other act. If the Court granted a second chance to every party who lost because of his failure to act in some manner, the Court clearly could not keep abreast of its work. In effect, we would be telling the parties that if they were not satisfied with the first decision, try again. However, on previous occasions, we have denied a petitioner's motion to vacate the decision and reconsider the opinion where the only basis for these motions was the petitioner's unexcused failure to raise certain issues earlier. * * *

Similarly, in denying the taxpayers' motion for reconsideration in Long v. Commissioner, 71 T.C. 724, 727 (1979), remanded on another issue 660 F.2d 416 (10th Cir. 1981), we observed:

> A party is entitled to have his day in court; both parties are entitled to this, but neither party is entitled to have more than one fair, reasonable opportunity to establish his claim or defense. To allow more would be to protract litigation to the extent which would preclude the administration of justice. [Selwyn Operating Corp. v. Commissioner, 11 B.T.A. 593, 595 (1928).]

> The parties cannot try their cases with hindsight.

By way of background, we shall restate certain of the findings and conclusions in our Opinion that are pertinent to our consideration of the respective motions for reconsideration of

Mr. Gordon and Ms. Gordon.  In our Opinion, we addressed Mr. Gordon's contention that the Court should reject respondent's determination that he and Ms. Gordon (petitioners) are not entitled to the net operating loss deduction for 1988 (claimed 1988 NOL deduction), which petitioners claimed in the joint Federal income tax return (return) that they filed for that year and which is attributable to an alleged net operating loss carryover from their taxable year 1986.[3]  Resolution of that issue turned on whether a net trading loss that Mr. Gordon sustained from his activities as an options market maker during 1986 (1986 net trading loss) constituted an ordinary loss, as Mr. Gordon contended, or a capital loss, as respondent contended.  On the record before us, we found that Mr. Gordon failed to show (1) that the 1986 net trading loss constituted a capital loss and (2) that petitioners are entitled to the claimed 1988 NOL deduction.  In so holding, we found on the record presented to us (1) that pursuant to section 1256(f)(3)(A),[4] the 1986 net trading loss is treated as a loss from the sale or exchange of a capital asset and (2) that Mr. Gordon failed to establish that the hedging exception in section 1256(f)(3)(B) applies to any portion of his 1986 net trading loss.

---

[3]  Ms. Gordon did not contend that she and Mr. Gordon are entitled to the claimed 1988 NOL deduction; instead she agreed to be bound by the Court's holding on that issue.

[4]  All section references are to the Internal Revenue Code in effect for the years at issue.

We next addressed in our Opinion Mr. Gordon's contention that respondent is equitably estopped from claiming that petitioners are not entitled to the claimed 1988 NOL deduction (equitable estoppel issue). We rejected Mr. Gordon's contention because we found on the record presented to us that Mr. Gordon failed to show that the doctrine of equitable estoppel should be applied against respondent.

The final matter we addressed in our Opinion was Ms. Gordon's contention that she qualifies for innocent spouse relief under section 6013(e)(1) with respect to the portion of petitioners' understatement of tax for 1988 that is attributable to the claimed 1988 NOL deduction (innocent spouse issue). In rejecting her contention, we stated:

> Ms. Gordon does not even claim that Mr. Gordon did not hold the options in question for the purposes specified in section 1256(f)(3)(B), let alone that there was no substantial argument that can be made that he so held any of those options. Ms. Gordon could have developed the record in order to attempt to establish that Mr. Gordon did not hold the options that generated his 1986 net trading loss for the purposes specified in section 1256(f)(3)(B). However, she failed to do so. [Gordon v. Commissioner, T.C. Memo. 1997-193.]

We found on the record presented to us that Ms. Gordon failed to show (1) that there is no basis in fact or in law within the meaning of section 6013(e)(2)(B) for the claimed 1988 NOL deduction and (2) that that item constitutes a grossly erroneous item within the meaning of that section. We held that therefore Ms. Gordon is not entitled to innocent spouse relief under section 6013(e)(1).

Mr. Gordon's motion

In his motion for reconsideration, Mr. Gordon asks that we reconsider our holding with respect to the equitable estoppel issue. In that motion, Mr. Gordon essentially restates the arguments that he made on brief and has not shown any unusual circumstances or substantial error. Accordingly, we shall deny Mr. Gordon's motion.

Ms. Gordon's Motion

In her motion for reconsideration, Ms. Gordon asks that we reconsider our holding with respect to the innocent spouse issue and for the first time advances arguments relating to the impact of section 1256(f)(3)(B) and Mr. Gordon's alleged hedging activities on the resolution of that issue. Ms. Gordon argues that we erred in finding that she failed to show that the 1988 NOL deduction is a grossly erroneous item within the meaning of section 6013(e)(2)(B) because "respondent has never contended that Mr. Gordon's hedging allegations, or the existence of §1256(f)(3)(B), provided a basis for finding that his claimed 1986 net trading loss did not constitute a grossly erroneous item." Ms. Gordon had the burden of proving that she satisfied the requirements of section 6013(e)(2)(B). Her burden was not altered as a result of respondent's having advanced in support of respondent's position under section 6013(e)(2)(B) reasons other than those relating to the hedging exception in section 1256(f)(3)(B), which other reasons we rejected in our Opinion. A

deficiency may be approved on the basis of reasons other than those relied upon by respondent and even where respondent's reasons are incorrect. Wilkes-Barre Carriage Co. v. Commissioner, 39 T.C. 839, 845 (1963), affd. 332 F.2d 421 (2d Cir. 1964).

It is Ms. Gordon's position that she does not have the burden of showing that there is no basis in fact or in law under section 1256(f)(3)(B) for treating any portion of the 1986 net trading loss as an ordinary loss. Alternatively, it is Ms. Gordon's position that if she did have that burden, we erred in finding in our Opinion that she failed to satisfy it. Ms. Gordon's positions are grounded on her view that the Court decided the innocent spouse issue "against the backdrop of its erroneous conclusion that Mr. Gordon claimed that he held most of his options for the purposes specified in §1256(f)(3)(B)". Although we acknowledge here, as we did in our Opinion, that Mr. Gordon's position was not altogether clear, we were satisfied when we issued our Opinion (as was respondent at trial and on brief), and we are satisfied now, that Mr. Gordon did claim that he held most of the options that generated the 1986 net trading loss for the purposes specified in section 1256(f)(3)(B). Indeed, Mr. Gordon stated in his trial memorandum submitted prior to trial and throughout his opening and answering briefs submitted after trial that the 1986 net trading loss constituted an

ordinary, and not a capital, loss because of the hedging nature of his transactions.[5]

Ms. Gordon contends that even if Mr. Gordon had claimed that he held most of the options that generated the 1986 net trading loss for the purposes specified in section 1256(f)(3)(B), she nonetheless satisfied her burden of proof under section 6013(e)(2)(B). That is because, according to Ms. Gordon, the "record clearly establishes that Mr. Gordon did not hold any of his options for the purposes specified in §1256(f)(3)(B), and that §1256(f)(3)(B) does not provide a substantial legal argument for Mr. Gordon's claimed ordinary loss deduction in 1986." To support her position, Ms. Gordon points, inter alia, to Mr. Gordon's testimony that (1) he used certain options to hedge the risks that were associated with certain other options, (2) he used common stock to hedge the risks that were associated with certain other options, and (3) he held the common stock that he had in his "account" as a "hedge." Based on that testimony, Ms. Gordon concludes that the hedging activities about which Mr. Gordon testified were the only hedging activities in which he was involved and that Mr. Gordon did not use the options that gener-ated the 1986 net trading loss to hedge the risks that were

---

[5] For example, Mr. Gordon contended in his answering brief that "IRC Code 1256 Treas Reg. 1.1221-2 states" that "To qualify for ordinary treatment as a hedging transaction taxpayer must show that the options served to reduce risk with respect to ordinary property".

associated with any other property that he owned.  As the finder of fact, when we issued our Opinion we were, and we are now, unable to make any such findings based on the record presented to us in these cases.  We found Mr. Gordon's testimony regarding his alleged hedging activities to be general, vague, and conclusory and found the entire record before us to be unclear about the nature and extent of any such activities.  That is precisely why we found that Mr. Gordon failed to establish that he held the options that generated the 1986 net trading loss for the purposes specified in section 1256(f)(3)(B), rather than finding that the record established that he did not so hold those options.[6] However, as we stated in our Opinion, that finding "does not necessarily mean that Mr. Gordon did not hold any of the options that generated his 1986 net trading loss for the purposes speci- fied in section 1256(f)(3)(B)."  Our review of the entire record in these cases left a question in our mind about whether or not Mr. Gordon was engaged in hedging activities during 1986 that fit within section 1256(f)(3)(B).  That question was reinforced by Mr. Gordon's claims in his trial memorandum as well as throughout his opening and answering briefs that the 1986 net trading loss

---

[6]  Respondent also believed that the record relating to the nature and extent of Mr. Gordon's alleged hedging activities was unclear.  Consequently, respondent argued on brief that we should resolve the question presented to us under sec. 1256(f)(3)(B) based on Mr. Gordon's failure to satisfy his burden of proof on that issue.

constituted an ordinary, and not a capital, loss because of his hedging activities and his apparent belief that he had introduced sufficient evidence to establish that he held the options that generated the 1986 net trading loss for the purposes specified in section 1256(f)(3)(B).

Ms. Gordon further contends that even if Mr. Gordon had claimed that he held most of the options that generated the 1986 net trading loss to hedge the risks that were associated with other property that he owned, Mr. Gordon was not a "dealer in securities".[7] Thus, according to Ms. Gordon, "as a matter of law" under general income tax rules, any loss with respect to any such hedged property would not have been an ordinary loss in Mr. Gordon's hands, and, consequently, regardless of the nature of his hedging activities, Mr. Gordon could not have fit within the hedging exception in section 1256(f)(3)(B). In support of her position, Ms. Gordon points to the following testimony elicited by respondent's counsel on respondent's cross-examination of Mr. Gordon:

> Q During the tax year 1986, while you were on the floor of the American Stock Exchange, * * * were

---

[7] Although Ms. Gordon does not provide an explanation in her motion as to what she means by a "dealer in securities", we assume that she is referring to an individual who holds securities, other than the type of options that were held by Mr. Gordon during 1986, that are excluded from the definition of a capital asset under sec. 1221(1). Our use herein of the phrase "dealer in securities" shall have the same meaning as we assume Ms. Gordon intended by the use of that phrase.

- 11 -

you a dealer in securities?

     A     No.

Ms. Gordon also points to the following testimony elicited by Ms.

Gordon, through her counsel, on Ms. Gordon's direct examination

of Mr. Gordon:

     Q     * * *

     For what purpose were you holding the stock that
     you -- that you had in your account?

     A     Hedge.

The only other question relating to Mr. Gordon's hedging alle-

gations that Ms. Gordon asked Mr. Gordon was the following:

     Q     * * * You indicated that you were not a
     dealer in securities.  What did you mean by that?

          *     *     *     *     *     *     *

     A     I would classify a dealer in securities as a
     specialist on the New York Stock Exchange who makes a
     market in the underlying stock of the options I traded.

     Based on the foregoing testimony, we were able to find in

our Opinion that Mr. Gordon was not a specialist on the New York

Stock Exchange who made a market in the stocks underlying the

options that he traded.  However, we were unable to find, based

on Mr. Gordon's conclusory testimony quoted above that he held

certain stock in an unidentified account[8] as a hedge and other

_____

8  The only documentation in the record of any "account" main-
tained by Mr. Gordon during 1986 consisted of the following
statements issued to him by Wagner Stott Clearing Corp. (Wagner
Stott statements):  Wagner Stott statements for the periods Mar.
                                                  (continued...)

testimony that he gave regarding his use as a hedge of the stock that he held in the account that he maintained during 1986 at Wagner Stott Clearing Corp., that he was not a dealer in securities during 1986, especially since other evidence in the record established, and we found in our Opinion, that during that year Mr. Gordon was licensed by the National Association of Security Dealers to sell securities to the public and that he was registered with the Securities Exchange Commission as a broker/dealer. The entire record presented to us left open the distinct possibility in our mind that Mr. Gordon could have qualified as a dealer in securities during 1986 and that he could have fit within the hedging exception in section 1256(f)(3)(B).

It is significant that Ms. Gordon did not attempt to clarify the record regarding Mr. Gordon's alleged hedging activities. The two questions quoted above are the only questions relating to Mr. Gordon's alleged hedging activities that Ms. Gordon, through

---

[8] (...continued)
27 through May 30, 1986, and Oct. 31 through Nov. 28, 1986. We found in our Opinion that those Wagner Stott statements for Mar. 27 through May 30, 1986, reflected that Mr. Gordon held the stock of 11 companies at the end of the periods covered by those statements. It was not clear to us from the conclusory testimony of Mr. Gordon quoted above whether the "account" to which Mr. Gordon was referring in that testimony was the Wagner Stott Clearing Corp. account that he maintained in his name during 1986, whether Mr. Gordon held any other stock during that year through Wagner Stott Clearing Corp. other than that reflected in the Wagner Stott statements that were part of the record, or whether he had any other accounts during 1986 with other companies in which he held stock.

her counsel, posed to Mr. Gordon at trial. In our view, those questions and Mr. Gordon's responses to them did not elucidate his testimony about the nature and extent of his alleged hedging activities during 1986. Ms. Gordon's counsel could have asked Mr. Gordon, but did not, whether he was engaged in any hedging activities in addition to the hedging activities about which he testified. If Mr. Gordon's response to that question had been in the affirmative, Ms. Gordon's counsel could have further clari-fied the record by asking Mr. Gordon to identify all the property that he claimed he hedged and all the property that he claimed he used as a hedge and to describe his activities relating to the property that he claimed he hedged so that we could have made a determination as to whether that property was property any loss with respect to which would have been an ordinary loss in Mr. Gordon's hands. See sec. 1256(f)(3)(B).

It is also significant that although Ms. Gordon contends in her motion that, based on the record presented to us, we could, and should, have found in our Opinion that Mr. Gordon did not hold the options that generated the 1986 net trading loss for the purposes specified in section 1256(f)(3)(B), Ms. Gordon did not propose that we find any facts relating to Mr. Gordon's alleged hedging activities or otherwise relating to the requirements of

that section.[9]  Nor did she make any arguments on brief address-
ing the impact of section 1256(f)(3)(B) and Mr. Gordon's alleged
hedging activities on the resolution of the issue presented under
section 6013(e)(2)(B).  Indeed, Ms. Gordon made no mention what-
soever on brief of section 1256(f)(3)(B).[10]  It was only after
Ms. Gordon reviewed our findings and conclusions with respect to
the section 6013(e)(2)(B) issue with which she was not satisfied
that she decided to advance for the first time in her motion for
reconsideration arguments relating to the effect of section
1256(f)(3)(B) and Mr. Gordon's alleged hedging activities on the
resolution of the issue presented under section 6013(e)(2)(B).

We find that the arguments that Ms. Gordon is advancing with

---

[9]  In fact, the only mention by Ms. Gordon on brief of Mr.
Gordon's claimed hedging activities is in Ms. Gordon's answering
brief where she objects to the following finding of fact proposed
by respondent:  "Mr. Gordon alleges that 80% of his trades were
hedging transactions although he never identified any of his
trades as a hedging transaction."  In objecting to that proposed
finding of respondent, Ms. Gordon states:  "Petitioner objects to
this proposed finding to the extent it deals with Mr. Gordon's
'allegations' of hedging.  Mr. Gordon's hedging activities, if
any, were related to protecting his option positions.  Mr. Gordon
did use options to hedge other positions."  We found Ms.
Gordon's statement in that objection about "Mr. Gordon's hedging
activities, if any," to be an acknowledgment by Ms. Gordon that
the record as it relates to Mr. Gordon's hedging activities was
not clear and required further development.

[10]  Nor did Ms. Gordon mention sec. 1256(f)(3)(A) on brief.  As
we indicated in our Opinion, Ms. Gordon did not even argue on
brief that, on the record presented, that section, and not sec.
1256(a)(3), requires that the 1986 net trading loss be treated as
a loss from the sale or exchange of a capital asset.

the benefit of hindsight in her motion for reconsideration[11] do not establish any unusual circumstances or substantial error.[12] Accordingly, we shall deny her motion.

To reflect the foregoing,

<u>An order will be issued</u>

<u>denying the respective motions</u>

---

[11]  We have considered all the arguments advanced by Ms. Gordon in her motion for reconsideration that are not discussed herein, and we find them to be without merit.

[12]  We note that although we decided the innocent spouse issue based on Ms. Gordon's failure to satisfy her burden of proving that the claimed 1988 NOL deduction was a grossly erroneous item within the meaning of sec. 6013(e)(2)(B), we could have found on the record presented to us that the claimed 1988 NOL deduction had a basis in fact and in law within the meaning of that section and that therefore it is not a grossly erroneous item.  That is because, as stated by the Court of Appeals for the Second Circuit in <u>Friedman v. Commissioner</u>, 53 F.3d 523, 529-530 (2d Cir. 1995), affg. in part and revg. in part T.C. Memo. 1993-549:

> The "innocent spouse" defense was designed to prevent the inequity of holding one spouse liable for the oversubtle financial machinations of the other; the defense was not intended to permit one spouse to escape liability for an apparently legitimate claim that turns out to be disallowed.  The defense is all the more inappropriate * * * [where] both taxpayer[s] * * * were equally in the dark as to the future status of their claim when they signed their * * * return.

Moreover, the record in these cases establishes that the question of the treatment of the 1986 net trading loss as either an ordinary or a capital loss is a technical question of law, see <u>Haymond v. Commissioner</u>, T.C. Memo. 1997-289, and the fact that Mr. Gordon sold option contracts in the normal course of his trade or business as an options market maker "provided an arguably colorable--albeit incorrect--basis" for the treatment of the 1986 net trading loss as an ordinary loss, see <u>Kelly v. Commissioner</u>, T.C. Memo. 1996-529, supplemented by T.C. Memo. 1997-99.

<u>for reconsideration of Mr. Gordon</u>

<u>and Ms. Gordon</u>.